**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
**UNITED STATES OF AMERICA,**                       )
                                                    )
    **Plaintiff,**                )
                                                    )
    **v.**                        )     **Criminal No. 1:17-CR-00109 (APM)**
                                                    )
**AZAM DOOST,**                                     )
                                                    )
    **Defendant.**                )
_____)

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its undersigned counsel, hereby submits this memorandum in aid of sentencing of defendant Azam Doost (hereinafter "defendant"). Following trial in this matter, defendant was convicted on counts 1-20 of the indictment against him, but acquitted on counts 21-23. The counts of conviction charge defendant with defrauding the Overseas Private Investment Corporation ("OPIC"), a government agency, with regard to a loan obtained from OPIC by defendant of $15.8 million in support of OPIC's efforts to assist reconstruction in Afghanistan, a loan for which defendant paid none of the principal and only that interest he needed to pay to continue to obtain disbursement of funds under the loan. In obtaining the disbursement of the loan proceeds, defendant submitted fraudulent documents to OPIC. Upon receiving the loan proceeds, defendant laundered the money to hide its location and ownership. Defendant's actions after obtaining the proceeds, and his contemporaneous defrauding of other government funded organizations, showed his intent to defraud OPIC. Although defendant might have done good things for himself and the people of Afghanistan if he had been honest in this matter, he chose instead to commit fraud. As OPIC said in its Victim Impact Statement submitted to the Court through the Probation Officer: "Unfortunately for the people of Afghanistan, this

promising opportunity has been lost as a result of Mr. Doost's actions.  Contributing to the development of less developed economies, such as Afghanistan, is at the heart of OPIC's mission—one that cannot be achieved when its borrowers engage in fraud."

As a result of defendant's offenses, the government requests that the Court, after due consideration of the factors under 18 U.S.C. § 3553(a), including the Sentencing Guidelines, impose on defendant a sentence within the Sentencing Guidelines range of 135 to 168 months. Furthermore, the government requests that defendant be ordered to pay restitution and forfeiture of $8,940,742 each. The government defers to the Court as to the amount of a fine, if any, the defendant should pay.  Finally, the mandatory Special Assessment of $100 per offense totals $2,000 for the twenty counts of conviction.

## I. Procedural and Factual Background

### A. Procedural History

On June 7, 2017, the grand jury returned a 23-count indictment against defendant.  ECF #1.  The indictment charged defendant with three counts of major fraud against the United States, in violation of 18 U.S.C. § 1031(a), eight counts of wire fraud, in violation of 18 U.S.C. § 1343, two counts of making a false statement on a loan application or extension, in violation of 22 U.S.C. § 2197(n) and 18 U.S.C. § 2, two counts of making a false statement on a loan application or extension, in violation of 22 U.S.C. § 2197(n), and eight counts of money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2.  As stated above, these charges arise from defendant's scheme to defraud OPIC, a U.S. government agency, with regard to this $15,800,000 loan. Following the arrest of defendant on these charges in Dallas, Texas, and his subsequent appearance before this Court, he was released on conditions awaiting trial.  ECF #9.

Trial in this matter began on September 10, 2018.  On September 24, 2018, the jury returned verdicts that defendant was guilty of counts 1-20 and not guilty of counts 21-23 (the last three money laundering counts).  ECF #53.  Defendant continued on conditions of release pending sentencing, then scheduled for December 14, 2018.

On September 28, 2018, the government filed a motion for a preliminary order of forfeiture.  ECF #60.  The proposed order of forfeiture is for a money judgment of $8,940,742, the total amount listed in the counts of conviction in the indictment.

On November 2, 2018, the Probation Officer filed the Draft Presentence Investigation Report ("PSR").  ECF #73.  The PSR found that the applicable Sentencing Guidelines Offense Level is 33 and that the criminal history category is I, with a resulting Sentencing Guidelines advisory range of 135 to 168 months in Zone D, although the statutory maximum for counts 1-3 is 120 months.  PSR at 23, ¶ 119.  The government agrees with those findings.

On November 5, 2018, with permission of the Court, trial counsel for defendant withdrew from this case, and new defense counsel entered the case.  On November 19, 2018, the Court granted a defense motion for extension of time to file post-trial motions, including sentencing memoranda.  ECF #78.  The Court set January 22, 2019 as the date for the filing of all sentencing memoranda.  *Id.*

**B.  Factual Background[1]**

Defendant and his brother co-owned a company known as Equity Capital Group, LLC ("ECG") located in Dubai, United Arab Emirates ("UAE").  In or about 2006, one of ECG's subsidiaries, Equity Capital Mining, LLC ("ECM"), obtained a 10-year lease at the White Dove

---

[1]  The facts stated here are consistent with those in The Offense Conduct recited in the PSR, at 5-12, ¶¶ 6-44.

Marble Mine located in Cheshti-i-Sharif, Afghanistan (approximately 120 km east of Herat) (the "Marble Mine") from the Afghanistan Minister of Mining and began extracting marble for export. Around the same time, defendant began construction of the Cheshti-i-Sharif Marble Factory ("the Marble Factory") in Herat to process marble extracted from the Marble Mine.  The factory opened in May of 2011.

On or about February 19, 2010, defendant executed a loan agreement with OPIC whereby OPIC agreed to provide up to $15,800,000 to ECM for the development, maintenance, and operation of the Marble Mine.  Defendant was personally responsible for a matching amount of money.  The loan agreement required quarterly reports from ECM, "setting forth in reasonable detail all transactions between the borrower [ECM], on the one hand, and a Shareholder [defendant and his brother] or any Affiliate of a Shareholder, on the other hand[.]"  An "Affiliate' was defined in the loan agreement, in relevant part, as "with respect to any Person, (i) any other Person that is directly or indirectly controlled by, under common control with, or controlling such Person; . . . (iii) any officer or director of such Person; or (iv) any spouse or relative of such Person."  In relevant part, "Person" was defined in the loan agreement as "an individual, a legal entity, including a partnership, a joint venture, a corporation, a trust, and an unincorporated organization[.]"  The loan agreement further required defendant to submit purchase invoices to document ECM's expenses for the Marble Mine that would be paid for with proceeds from the loan.

Over the eight month period following approval of the OPIC loan, defendant and his business consultant ("Consultant") submitted to OPIC, via email or in person, three requests to disburse loan funds on or about the following dates: April 18, 2010 for $7,000,000; July 15, 2010 for $7,000,000; and November 28, 2010 for $1,800,000.  Defendant and the Consultant attached

alleged invoices from various vendors of equipment for the Marble Mine to each disbursement request.

At trial, the government proved that defendant defrauded OPIC in two main ways:  (1) by failing to disclose a number of affiliated transactions, as required by the loan agreement; and (2) by submitting false and/or fraudulent purchase invoices purporting to document expenses for the Marble Mine.  Indeed, a number of the invoices that defendant submitted or caused to be submitted through the Consultant were demonstrably false and/or fraudulent and others had indicia of fraud, such as sequentially numbered invoices with the same date, and almost no detail of what item was allegedly purchased from the alleged vendor, such as serial or VIN numbers.  Moreover, defendant unquestionably owned and/or controlled a number of the vendors from which he purportedly incurred expenses for the Marble Mine, and failed to disclose this self-dealing to OPIC as required by the loan agreement.  Furthermore, the vendors that defendant owned and/or controlled and from which he allegedly bought equipment were shell companies with no demonstrable sales.

OPIC issued the requested funds directly to the vendors in reliance on the invoices and banking information that defendant provided.  Despite the requirements of the loan agreement, defendant made no principal payments on the loan.  As a result, the loan went into default with a principal balance of approximately $15,800,000 and past due interest of approximately $1,913,788.99.

In addition to OPIC, defendant sought, and in some cases obtained, funding from three U.S. government-funded (through the United States Agency for International Development) non-governmental organizations ("NGOs") to develop the Marble Mine and the Marble Factory. The NGOs are based in the Washington, D.C. area, and during the relevant time period, ran loan and

grant programs for small and medium businesses in Afghanistan.

The NGOs were: (1) ACDI/VOCA, through its Afghan Rural Finance Center ("ARFC") loan program; (2) DAI, through its Afghan Small and Medium Enterprise Development ("ASMED") grant program; and (3) SEAF, through its Afghan Growth Finance ("AGF") loan program.

At trial, the government presented evidence that defendant engaged in a scheme to defraud the NGOs that was related, and similar, to the OPIC scheme by making false representations and submitting false invoices in order to obtain loan and grant money and failing to disclose self-dealing.   Defendant even used a number of the same false invoices to defraud, or attempt to defraud, the NGOs as he used to defraud OPIC.  The government's Notice and Motion in Limine Pursuant to Fed. R. Evid. 404(b), ECF #40, set forth the facts of these separate fraud schemes in more detail, and the legal basis for the admissibility of this evidence. The Court found the facts as set forth in the government's motion met the standard under Fed. R. Evid. 404(b) and thus were admissible at trial.  Dkt. Entry 8/27/2018.

## II.  Government's Recommendation

The United States respectfully requests that the Court sentence the defendant to a period of incarceration within the advisory Sentencing Guidelines range of 135-168 months.  As the Court knows, under 18 U.S.C. § 3553(a), it should consider several factors in arriving at an appropriate sentence, including: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," (2) the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment, (3) the Sentencing Guidelines and related Sentencing

Commission policy statements, (4) the need to avoid unwarranted sentence disparities, and (5) the need to provide restitution to the victim of the crime.

Each of these factors support a sentence within the applicable Sentencing Guideline range. Most importantly, such a sentence is critical to reflect the seriousness of the offense, to promote respect for the law, to provide for just punishment for the offense, and to deter others.

### A. The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

The defendant committed serious offenses by defrauding a United States government agency on a $15.8 million loan and a sentence within the advisory Sentencing Guidelines range is needed to provide just punishment for the offense.  Defendant used his position within a private sector company to obtain this loan, to defraud OPIC, and to fail to repay the loan.  A Guidelines sentence would help provide appropriate punishment and send a general deterrence message.  In the current age, the U.S. government agencies and government funded agencies, along with the U.S. military, work very closely together to implement U.S. policies in warzone areas.  Specifically in this case, among other things, the purpose of the loan was to help rebuild Afghanistan and build the capacity of private companies in Afghanistan to develop the natural resources in that country. The defendant in defrauding OPIC not only stole from it, but deprived other Afghan companies and the Afghan people generally of the benefits that would come from that loan money.  Significant criminal conduct by defendant and others like him in this context in Afghanistan affects the U.S. reconstruction efforts there and the reputation of the U.S. as it seeks to demonstrate legitimate business practices in those efforts.

As OPIC said in its Victim Impact Statement, under the heading "Opportunities Lost":

> Unfortunately for the people of Afghanistan, this promising opportunity has been lost as a result of Mr. Doost's actions.  Contributing to the development of less developed economies, such as Afghanistan, is at the heart of OPIC's mission—one that cannot be achieved when its borrowers engage in fraud.  Criminal acts such as this also harm OPIC's business reputation, making it more difficult to carry out its

work—not only in Afghanistan, but in other countries whose economic development is a priority for the US.  Funds intended to support Equity Capital Mining as a vibrant enterprise in a troubled economy were diverted for personal gain.  No jobs were created and no pass-through economic growth took place.

Defendant sought to capitalize on the circumstances within the Afghanistan war zone to facilitate his criminal activity.  *See* U.S. Department of Justice Office of Legislation and Public Affairs testimony before the United States Sentencing Commission in support of enhancement for fraud offenses that occur primarily overseas, U.S.S.G.  § 2B 1.1 (b)(10)(B), available at p. 13 of http://www.ussc.gov/Legislative_and_Public_Affairs/Public_Hearings_and_Meetings/20120314/ Testimony_DOJ.pdf (discussing that Office's "experience with crimes occurring in Iraq, Afghanistan, and elsewhere where the United States is engaging in contingency operations" which led it to conclude that "[t]hese crimes take advantage of particular vulnerabilities in our financial and audit systems, as we deploy resources in war zones and to support peacekeeping and other nation-building efforts.  In addition, these crimes often take advantage of the good will the United States extends to other countries, and of the particular mission of the United States as ambassador of free political systems and champion of human rights globally.  These crimes are also more difficult to investigate and prosecute because of their overseas venue.").

Importantly, this criminal conduct is all the more serious as defendant did not suddenly find himself in such dire financial straits that he was somehow forced to break the law for his (or his family's) own survival.  Rather, instead of fulfilling his legal obligations under the loan agreement, defendant decided simply to take the money for his own personal benefit and not repay the loan.  As one judge observed,

> A crime of fraud by one who already has more than enough—and who cannot argue that he suffered a deprived or abusive childhood or the compulsion of an expensive addiction—is simply a crime of greed.  A crime of fraud by one who is otherwise successful, apparently by legitimate means, is also particularly disturbing.  Thus, in light of [defendant's] history and characteristics, this is a case of greed for the sake of greed, not greed for the sake of gain.

*United States v. Miell*, 744 F. Supp. 2d 904, 955 (N.D. Iowa 2010), *aff'd*, 661 F.3d. 995 (8th Cir. 2011).

### B.  The need for the sentence to afford adequate deterrence.

A sentence within the Guidelines range is also critical to deter others from committing or contemplating committing white collar crimes while working with U.S. government agencies in Afghanistan.  General deterrence is of particular importance in white collar cases such as this as other would-be offenders need to be put on notice that there are severe consequences for engaging in this type of criminal conduct.  Even if this defendant is unlikely to reoffend and does not need to be specifically deterred from committing additional crimes, that point does not address the important and related issue of general deterrence.  *See, e.g., United States v. Musgrave*, 761 F.3d 602, 609 (6th Cir. 2014) ("Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence") (citation and internal quotation omitted); *United States v. Goffer*, 721 F.3d 113, 132 (2nd Cir. 2013) (addressing the need for general deterrence for those who might otherwise feel that some white-collar crimes are "games worth playing").  A sentence within the Sentencing Guidelines range would help deter others who might engage in similar crimes, or contemplate committing such crimes, especially those involved in U.S. reconstruction efforts in Afghanistan.

### C.  The Sentencing Guidelines.

As noted above, the applicable Sentencing Guidelines Offense Level is 33 and the criminal history category is I, with a resulting Sentencing Guidelines advisory range of 135 to 168 months in Zone D, although the statutory maximum for counts 1-3 is 120 months.  PSR at 23, ¶ 119.  This offense level is the result of the following:  (1) a base offense level of 7; (2) an 18-level increase

for total intended loss to the government of more than $3,500,000, but less than $9,500,000;[2] (3) a 2-level increase for a fraud scheme a substantial part of which was committed from outside the United States and otherwise involved sophisticated means; (4) a 2-level increase because defendant was convicted under 18 U.S.C. § 1956; and (5) a 4-level adjustment because defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive.  PSR at 14, ¶¶ 54-59.  The government agrees with these findings by the Probation Office in the PSR.

###    D.    The need to avoid unwarranted sentencing disparities among defendants with similar records.

Here, a Guidelines sentence would help prevent such disparities between defendant and similar defendants for these offenses.  Although in each case, as the Court knows, a sentencing judge considers the individual defendant and specific facts of the case before the judge, the judgment in other similar cases might help guide what is an appropriate sentence for the defendant before this Court.  Following are the judgments in some cases that might provide some guidance. *See, e.g., United States Claudio Eleazar Osorio*, Crim. No. 1:12-cr-20901-WPD-1 (S.D.FL), ECF ## 172, 176, 178 (defendant sentenced to 150 months of imprisonment, following a government 5K1.1. motion, for two counts of conspiracy to commit wire fraud, the second count involving a $10,000,000 loan from OPIC as to which defendant defrauded OPIC);  *United States v. William R. Whyte*, Crim. No. 4:12-cr-21 (JLK) (WDVA), ECF # 226 (defendant sentenced to 70 months in prison for major fraud against the U.S. of more than $2,000,000 in U.S. efforts to rebuild Iraq); *United States v. Kenneth Narzikul*, Crim. No. 2:14-cr-00386-HB-1 (EDPA), ECF # 29 (defendant

---

[2]  The PSR found that "the government was able to prove that the total intended and actual loss to OPIC as a result of the defendant's scheme was $8,940,742."  PSR at 12, ¶ 44; *see id.* at 13, ¶ 46, at 26, ¶ 146.

sentenced to 37 months in prison for major fraud against the U.S. of approximately $1,200,000); *United States v. M. Cleve Collins*, Crim. No. 2:16-cr-20253-JTF-1 (WDTN), ECF # 69 (defendant sentenced to 24 months in prison for major fraud against the U.S. of over $580,000). The respective press releases issued following the sentencings in these cases are attached as Attachment #1 to provide some factual basis underlying the respective sentences.

**E. The need to provide restitution to any victims of the offense.**

A United States government agency, OPIC, is the victim in this matter. Because there was financial loss, restitution is applicable. The burden is on the government to prove that loss. *See* 18 U.S.C. § 3664(e) ("burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government"); *United States v. Fair*, 699 F.3d 508,513 (D.C. Cir. 2012). The government has met that burden in the evidence it presented at trial showing a loss to OPIC of $8,940,742. PSR at 12, ¶ 44; at 13, ¶ 46; and at 26, ¶ 146. The restitution sought is the dollar amount of the fraudulent payments to defendant by OPIC for the counts of conviction, a conservative estimate of the loss to OPIC in this matter.

Furthermore, forfeiture is applicable. *See United States v. Venturella*, 585 F.3d 1013, 1019-20 (7th Cir. 2009) ("forfeiture seeks to punish a defendant for his ill-gotten gains by transferring those gains . . . to the United States Department of Justice . . . , while restitution seeks to make the victim whole – in this case, the federal and state agencies the defendant's defrauded") (citations omitted); *United States v. Webber*, 536 F.3d 584, 602-03 (7th Cir. 2008) ("Forfeiture and restitution are distinct remedies. Restitution is remedial in nature, and its goal is to restore the victim's loss. Forfeiture, in contrast, is punitive; it seeks to disgorge any profits that the offender realized from his illegal activity."); *United States v. Emor*, 850 F. Supp. 2d 176, (D.D.C. 2012) ("[a]lthough defendants in some cases must pay both restitution and criminal forfeiture, that result

is not impermissible double recovery") (internal quotations and citation omitted).  As set forth in the government's motion for a preliminary order of forfeiture, ECF # 60 at 2, the forfeiture sought is the dollar amount of the fraudulent payments to defendant by OPIC for the counts of conviction, a conservative estimate of the ill-gotten gains received by defendant.

### III.  Conclusion

Accordingly, consistent with the relevant sentencing factors discussed above, the government requests that the Court impose a sentence within the resulting Sentencing Guidelines range of 135 to 168 months.  *See United States v. Gall*, 552 U.S.38, 51 (2007) ("[i]f the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness"); *United States v. Dorcely*, 454 F.3d 366, 376 (D.C. Cir. 2006) ("a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness").[3]  The government also request that defendant be ordered to pay restitution and forfeiture of $8,940,742 each.  The government defers to the Court as to the amount of a fine, if

---

[3] On the other hand, a "sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply."  *Rita v. United States*, 551 U.S. 338, 351 (2007); *see United States v. Settles*, 530 F.3d 920, 924 (D.C. Cir. 2008).   Rather, the Court must consider the Guidelines as one factor in its consideration of the factors under 18 U.S.C. § 3553(a), *see Settles*, 530 F.3d at 924-25, as the government does above.

any, the defendant should pay.  Finally, the mandatory Special Assessment of $100 per offense

totals $2,000 for the twenty counts of conviction.

Respectfully submitted,

ROBERT A. ZINK
Acting Chief, Fraud Section

/ s /  *Daniel P. Butler*

_____
DANIEL P. BUTLER
D.C. Bar #417718
MICHAEL P. MCCARTHY
D.C. Bar #1020231
Trial Attorneys, Fraud Section
Criminal Division
United States Department of Justice
1400 New York Avenue, NW, Fourth Floor
Washington, D.C. 20530
(202) 307-2184 (Butler)
(202) 305-3995 (McCarthy)
Daniel.Butler2@usdoj.gov
Michael.McCarthy2@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2019, a copy of the foregoing document has been sent

via ECF to counsel of record for the defendant.

/ s /  *Daniel P. Butler*

_____
DANIEL P. BUTER
MICHAEL P. MCCARTHY
Trial Attorneys, Fraud Section
Criminal Division
United States Department of Justice