# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:17 cr 109 (APM)** |
| | ) | |
| **AZAM DOOST, also known as** | ) | |
| **Adam Doost,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## REPLY IN SUPPORT OF COMBINED RULE 29 AND 33 MOTION

---

Glenn Seiden, *pro hac vice*
SEIDEN NETZKY LAW GROUP, LLC
333 South Wabash Avenue, Suite 2700
Chicago, Illinois 60604
312.236.3060
Illinois Bar ID 2543761
gseiden@snlgllc.com

Andrew M. Friedman
Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
12505 Park Potomac Avenue, 6th Floor
Potomac, MD 20854
301.231.0942
Bar ID 462131
afriedman@shulmanrogers.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES     ii

INTRODUCTION     1

ARGUMENT     1

I.   As a Matter of Law, this Court Should Enter a Judgment of Acquittal on Count XV.     1

   A.   Count XV is Premised on the Fundamentally Ambiguous Email Exchange and Not the OPIC Loan Agreement Which is Largely Irrelevant.     1

II.   Taking into Consideration the Totality of the Evidence, Doost Received Ineffective Assistance of Counsel During Trial.     4

III.   Defendant's Challenges of the Indictment Are Well Grounded in Law and Fact Despite the Government's Contention to the Contrary, Reinforcing Defendant's Claim of Multiplicity and Ineffective Assistance of Counsel.     5

   A.   The Government's Own Argument Essentially Concedes That the Indictment Was Multiplicitous as to the Three Major Fraud Counts.     5

   B.   The Indictment Was Multiplicitous and Prejudicial in Charging Doost with Two Counts of Making a False Statement Within the Same Document.     7

   C.   Gaspari Menotti is an Untrustworthy Source and the Admission of Its Foreign Documents Was in Error.     10

   D.   The Wartime Suspension of Limitations Act Does Not Clearly Apply to Toll the Running of the Statute of Limitations.     13

     i.   The WSLA Does Not Apply Because the Hostilities in Iraq and Afghanistan Ended Prior to the Dates On Which the Allegations in the Indictment Occurred.     14

     ii.   In the Alternative, The WSLA Only Applies to Crimes Whose Elements Contain as Fraud as an "Essential Ingredient."     15

       a.   The WSLA Does Not Apply to Counts of False Statement Under 22 U.S.C. § 2197(n).     16

       b.   The WSLA Does Not Apply to Counts of Money Laundering     18

CONCLUSION     19

CERTIFICATE OF SERVICE     21

# TABLE OF AUTHORITIES

**Cases**

*Blockburger v. United States,*
  284 U.S. 299 (1932) ............................................................................................ 9

*Boumediene v. Bush,*
  553 U.S. 723 (2008) ........................................................................................... 14

*Bourjaily v. United States,*
  483 U.S. 171 (1987) ........................................................................................... 11

*Bridges v. United States,*
  346 U.S. 209 (1953) ............................................................................... 13, 16, 17

*Danann Realty Corp. v. Harris,*
  5 N.Y.2d 317 (1959) ............................................................................................ 3

*Elliott v. United States,*
  332 F.3d 753 (4th Cir. 2003) ............................................................................. 18

*Fisher v. United States,*
  231 F.2d 99 (9th Cir. 1956) ................................................................................. 6

*Hanson v. Waller,*
  888 F.2d 806 (11th Cir.1989) ........................................................................... 11

*Hart v. Gomez,*
  174 F.3d 1067 (9th Cir. 1999) ............................................................................ 5

*JP Morgan Chase Bank v. Winnick,*
  350 F. Supp. 2d 393 (S.D.N.Y. 2004) ................................................................. 2

*Mallis v. Bankers Trust Co.,*
  615 F.2d 68 (2d Cir.1980) ................................................................................... 2

*United States v. Mangieri,*
  694 F.2d 1270 (D.C.Cir.1982) ............................................................................ 8

*Neder v. United States,*
  527 U.S. 1 (1999) ............................................................................................... 18

*Public Schools v. Walker,*
  9 Wall. 282 (1870) ............................................................................................. 13

*Schumaker v. Mather,*
  133 N.Y. 590 (1892) ............................................................................................ 2

*Strickland v. Washington*,
466 U.S. 668 (1984) ............................................................................ 4, 19

*Toussie v. United States*,
397 U.S. 112 (1970) ................................................................................. 13

*United States ex rel. Landis v. Tailwind Sports Corp.*,
51 F. Supp. 3d 9 (D.D.C. 2014) ............................................................... 17

*United States v. Abney*,
812 F.3d 1079 (D.C. Cir. 2016) ............................................................. 4, 5

*United States v. Anghaie*,
2011 WL 720044 (N.D. Fl. February 21, 2011) ................................... 18, 19

*United States v. Beckham*,
968 F.2d 47 (D.C. Cir. 1992) .............................................................. 11, 12

*United States v. Bonds*,
608 F.3d 495 (9th Cir. 2010) .................................................................. 11

*United States v. Bruce*,
89 F.3d 886 (D.C. Cir. 1996) ..................................................................... 6

*United States v. Cross*,
249 F. Supp. 3d 339 (D.D.C. 2017) ....................................................... 4, 5

*United States v. Esquenazi*,
752 F.3d 912 (11th Cir. 2014) ................................................................. 19

*United States v. Grainger*,
346 U.S. 235 (1953) ................................................................................. 17

*United States v. Habig*,
390 U.S. 222 (1968) ................................................................................. 13

*United States v. Jackson*,
627 F.2d 1198 (D.C. Cir. 1980) ............................................................... 11

*United States v. Lemons*,
941 F.2d 309 (5th Cir.1991) ...................................................................... 6

*United States v. Lilly*,
983 F.2d 300 (1st Cir.1992) ....................................................................... 6

*United States v. Manafort*,
313 F. Supp. 3d 311 (D.D.C. 2018) ....................................................... 9, 10

*United States v. Marion*,
404 U.S. 307 (1971) ........................................................................ 13

*United States v. Morris*,
836 F.2d 1371 (D.C.Cir.1988) ........................................................ 12

*United States v. Odiodio*,
244 F.3d 398 (5th Cir. 2001) ......................................................... 19

*United States v. Prosperi*,
573 F. Supp. 2d 436 (D. Mass. 2008) ........................................... 14

*United States v. Sahley*,
526 F.2d 913 (5th Cir.1976) ............................................................. 7

*United States v. Sain*,
141 F.3d 463 (3d Cir. 1998) ............................................................. 6

*United States v. Sue*,
586 F.2d 70 (8th Cir.1978) ............................................................... 7

*United States v. Tarantino*,
846 F.2d 1384 (D.C.Cir.) ............................................................... 12

*United States v. Wells Fargo Bank, N.A.*,
972 F.Supp.2d 593 (S.D.N.Y. September 24, 2013) ...................... 17

*United States v. Wells*,
519 U.S. 482 (1997) ....................................................................... 18

*United States v. Wiehl*,
904 F. Supp. 81 (N.D.N.Y. 1995) .................................................... 7

**Statutes**

18 U.S.C. § 1001(a) .............................................................................. 9

18 U.S.C. § 1014 ................................................................................. 18

18 U.S.C. § 1031(a) .............................................................................. 6

18 U.S.C. § 3287 ..................................................................... 13, 14, 16

18 U.S.C. § 1956(a)(1)(B)(i) ......................................................... 16, 19

22 U.S.C. § 618(a)(2) ........................................................................... 9

22 U.S.C. § 2197(n) ..................................................................... passim

**Rules**

Fed. R. Evid. 801(d)(2) ................................................................................................ 10, 11, 12

**Other Authorities**

S. REP. 110-431 ............................................................................................................ 15

**INTRODUCTION**

First and as a matter of law, this Court should enter a judgment of acquittal on Count XV. Second, this Court should hold that, considering the totality of the evidence presented and not presented but available to previous counsel, Doost received ineffective assistance of counsel in his trial, and this Court should enter a judgment of acquittal on all counts, or in the alternative, grant a new trial. Third, the Indictment is multiplicitous in multiple respects, documents were admitted into evidence without any rational basis for being so admitted, and the Wartime Suspension of Limitations Act does not apply to the charges. Doost's verdict should be vacated and the Indictment dismissed.

**ARGUMENT**

**I.    As a Matter of Law, this Court Should Enter a Judgment of Acquittal on Count XV.**

As to Count XV – False Statement on Loan Application or Extension in violation of 22 U.S.C. § 2197(n), Doost moves for a judgment of acquittal on the ground that the prosecution has failed to present sufficient proof from which any rational juror could conclude beyond a reasonable doubt that Doost is guilty.

**A.    Count XV is Premised on the Fundamentally Ambiguous Email Exchange and Not the OPIC Loan Agreement Which is Largely Irrelevant**

The false statement alleged in Count XV – Making a False Statement on a Loan Application, was not made pursuant to the OPIC loan agreement (the "Loan Agreement") as set forth by the Government; rather, the alleged false statement was in response to a fundamentally ambiguous e-mail exchange, outside the usual norms of OPIC's practices. (Tr., 9/11/2018, a.m. session, at 407). The Government maintains that there is sufficient evidence to sustain a conviction on Count XV since the term "affiliate" was defined in the OPIC loan agreement and

that ample evidence was presented to the jury during the testimony of Cindy Shepard. However, rather than accepting a typed certificate, as mandated in the Loan Agreement, John Aldonas ("Aldonas") engaged in an email exchange, which by all accounts was fundamentally ambiguous. Rather than simply referencing the loan agreement's definition of "affiliate," Aldonas interjected his own confusing and ambiguous supplemental definitions of "affiliate" to which Doost responded. (R. 105, Defendant Doost's Combined Rule 29 and 33 Motion ("Rule 29 and 33 Motion"), Exhibit 12). As such, the language in the loan agreement is largely irrelevant.

Further, Doost's initial e-mail attaching a spreadsheet showing transactions between the Marble Mine and Marble Factory exemplifies the fact that, at the beginning of the exchange, Doost did not understand the meaning of "affiliate" as set forth in the Loan Agreement. Doost's lack of understanding was only furthered by Aldonas' fundamentally ambiguous instructions and redefining of the term ambiguous.

As to the Government's contention that the Loan Agreement contained a definition of "affiliate," in assessing extracontractual statements made which are contrary to written or express terms courts will look to two factors: (1) the sophistication of the parties; and (2) the existence of an unambiguous anti-reliance language in the agreement. *See JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393, 406 (S.D.N.Y. 2004) (in assessing whether reliance on extracontractual statements is reasonable or justifiable, New York takes a contextual view, focusing on the level of sophistication of the parties, the relationship between them, and the information available at the time of the operative decision)[1]; *Mallis v. Bankers Trust Co.*, 615 F.2d 68, 80-81 (2d Cir.1980) quoting *Schumaker v. Mather*, 133 N.Y. 590, 596 (1892) (sophisticated parties are held to a higher standard, especially since they have "the means of

_____

[1] The OPIC Loan Agreement is governed under New York law.

knowing, by the exercise of ordinary intelligence, the truth, or the real quality of the subject of the representation"). *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320 (1959) (finding that the plaintiff could not assert that it was relying on oral representations made by the defendant outside of a contract since there was anti-reliance clause within the contract).

Here, only one party is sophisticated as to the definition of terms within the OPIC loan contract: Aldonas, the Deputy Vice President of the Small Medium Enterprise division of the Finance Department at OPIC with over 35 years of experience. (**Exhibit 1**). By contrast, Doost, who was born in Afghanistan, had little or no experience in business transactions, loan agreements, or ventures as large and sophisticated as the Marble Factory and Marble Mine. Prior to securing a lease with the Afghan Ministry of Mines, Doost had experience only in small business settings such as importing and selling gems. Most importantly, absent from the OPIC Loan Agreement is any anti-reliance clause limiting extracontractual statements made by either party. Accordingly, although Aldonas' statements regarding the affiliate transactions were fundamentally ambiguous, Doost was still justified in relying on Aldonas' interpretations.

Next, the Government argues that the jury instructions properly laid out the alleged false statements and that the jury had already considered a similar alleged false statement in Count XIV. In actuality, neither the jury instructions nor any exhibit in evidence showed the fundamentally ambiguous exchange. (R. 58, pp. 19-20). Further, whether or not the jury had considered Count XIV is irrelevant since each charge need be proven, independently, beyond a reasonable doubt.

Accordingly, and consistent with the arguments as set forth in his Rule 29 and 33 Motion as well as in the instant Reply, as a matter of law, this Court should enter a judgment of acquittal on Count XV.

**II. Taking into Consideration the Totality of the Evidence, Doost Received Ineffective Assistance of Counsel During Trial**

The crux of the Government's argument that Doost did in fact receive competent assistance of counsel is centered around discrediting each individual showing Doost has made as either cumulative or unavailing. *Strickland v. Washington*, 466 U.S. 668, 695 (1984) ("[i]n making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury").

Although Doost's ineffective assistance of counsel claims are set forth extensively in Defendant's Combined Rule 29 and 33 Motion, for brevity a summarization of the claims are as follows: (1) failing to uncover and investigate the fundamentally ambiguous exchange for which Doost was convicted on Count XV; (2) failing to proffer evidence of several internal and external audits showing that equipment alleged to have not been purchased was accounted for; (3) failing to object to an untimely indictment; (4) failing to object to a multiplicitous indictment; (5) failing to object to the admission of foreign business documents from an untrustworthy source; (6) failing to call several credible, and unimpeachable, witnesses with personal knowledge; and (7) failing to object to confusing and incomplete jury instructions. Any *one* of these failures, in and of themselves, was deficient and prejudicial, as set forth in Defendant's Combined Rule 29 and 33 Motion.

Thus, "[a]lthough competent in all other respects, [trial counsel] fundamentally erred—in a manner that neither her own actual strategy nor any 'sound strategy' can adequately explain." *United States v. Cross*, 249 F. Supp. 3d 339, 349 (D.D.C. 2017) quoting *United States v. Abney*, 812 F.3d 1079 (D.C. Cir. 2016). It is "clear that counsel possessed [mitigating evidence] and understood the information it contained—and yet, inexplicably, opted not to introduce it as

evidence; use it to impeach…the government's star witness; or to employ it in any way to contradict the government's case." *Cross*, 249 F. Supp. 3d at 349.

Much of the evidence that trial counsel failed to proffer negated the intent required for a conviction on major fraud, wire fraud, and false statements, which is clearly and substantively ineffective assistance of counsel. *Id.* at 350 citing *Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir. 1999) ("[n]o 'sound strategy,' *Abney*, 812 F.3d at 1087, could support an attorney's decision to ignore evidence raising material doubt as to an essential element of the crime of which her client is accused"). In sum, the failure to present any one of the above enumerated key pieces of evidence was not only ineffective, it was prejudicial. And the fact that there were numerous failures only heightens the ineffective assistance of counsel that Doost received.

Accordingly, and consistent with the arguments as set forth in his Rule 29 and 33 Motion as well as in the instant Reply, Doost received ineffective assistance of counsel and this Court should reverse Doost's convictions and grant a new trial.

**III.    Defendant's Challenges of the Indictment Are Well Grounded in Law and Fact Despite the Government's Contention to the Contrary, Reinforcing Defendant's Claim of Multiplicity and Ineffective Assistance of Counsel**

The Government is incorrect in its contentions that Defendant has not made a showing of "good cause" by way of ineffective assistance of counsel. Doost has shown that his previous counsel was ineffective at his trial, failing to challenge the Indictment as multiplicitous, failing to challenge the admission of foreign business documents from an untrustworthy source, and failing to challenge the Indictment as barred by the statute of limitations.

**A.    The Government's Own Argument Essentially Concedes That the Indictment Was Multiplicitous as to the Three Major Fraud Counts**

Without much support in law or in fact, the Government contends that the Indictment was not multiplicitous. However, the Government concedes that *"[t]he disbursement requests were*

*all part of the same overall plan* but were independent criminal acts because each request was for an independent loan transaction." (R. 106, Government's Opposition to Defendant's Combined Rule 29 and 33 Motion, ECF #105 ("Gov't Response Brief"), p. 17 (emphasis added)). Part of the Government's contention is precisely the argument made by Defendant. However, the contention that each loan disbursement was a separate loan transaction simply has no basis in law or fact. There is but one OPIC Loan Agreement. (R. 105, Rule 29 and 33 Motion, Exhibit 39).

Without citing any law, the Government contends that each loan disbursement could have been executed independently, however, the loan disbursements depended entirely on approval on the Loan Agreement; without a Loan Agreement there would be no disbursements, and vice-versa.

As set forth in more detail and with additional support in Doost's Rule 29 and 33 Motion (pp. 32-35), in determining whether a particular action is a separate execution of a fraudulent scheme under 18 U.S.C. § 1031(a), courts look to whether the actions are "substantively and chronologically independent from the overall scheme." *United States v. Sain*, 141 F.3d 463, 473 (3d Cir. 1998). Movement of one sum of money, in several separate stages, only constitutes one "execution." *United States v. Bruce*, 89 F.3d 886, 889 (D.C. Cir. 1996) *citing United States v. Lemons,* 941 F.2d 309, 318 (5th Cir.1991). An examination of the facts of each particular case is appropriate to determine what constitutes an execution of a scheme, *United States v. Lilly,* 983 F.2d 300, 303–04 (1st Cir.1992), and "[d]oubt should be resolved *against* turning a single transaction into a multiple offenses. *Fisher v. United States*, 231 F.2d 99, 103 (9th Cir. 1956) (*emphasis added*).

As set forth in more detail and with additional support in Doost's Rule 29 and 33 Motion (pp. 32-35), in the Doost's case, the three loan disbursements were merely movements of money and all "integrally related" since they all flowed from the same loan application, from the same entity, to fund the same project, for one preconceived sum of money – $15.8 million. *United States v. Wiehl*, 904 F. Supp. 81, 90 (N.D.N.Y. 1995) (finding that focusing on the number of disbursements "as opposed to the execution of the contract for example, the government is able to manipulate the number of counts and subject defendants to the maximum penalty," thus, the several submissions was a single execution within the meaning of the major fraud statute).

The Indictment, in its language, actually supports the view that there was only one execution of the alleged scheme to defraud, as "[i]t was the *purpose* of the scheme and artifice for the defendant and his associates to unlawfully enrich themselves by *applying for and obtaining a loan from OPIC…*," (R. 1, p. 7, para. 3) (emphasis added), not applying for three distinct loans.

The Indictment is multiplicitous in charging three separate counts of major fraud, and is therefore, as a matter of law, prejudicial. Accordingly, and consistent with the arguments as set forth in his Rule 29 and 33 Motion as well as in the instant Reply, Doost should be subject to acquittal on Counts I-III of the Indictment, or in the alternative, be granted a new trial.

### B. The Indictment Was Multiplicitous and Prejudicial in Charging Doost with Two Counts of Making a False Statement Within the Same Document.

Counts XII and XIII of the Indictment wrongfully charged Doost with making two false statements within the same document—the "first disbursement request." However, "[t]he making of a number of false statements to a lending institution in a single document constitutes only one criminal violation." *United States v. Mangieri,* 694 F.2d 1270, 1281 (D.C.Cir.1982), quoting *United States v. Sue*, 586 F.2d 70, 71 (8th Cir.1978) (per curiam); *United States v. Sahley*, 526

F.2d 913, 918 (5th Cir.1976). This is so because 22 U.S.C. § 2197(n) is not concerned with the particular falsehoods used within the transaction, but with the loan *transaction* itself. *Mangieri*, 694 F.2d 1270 at 1281-82.

The Government contends that Count XII and XIII – False Statement on a Loan Application, are two separate loan transactions and two separate charges, even though both alleged false statements were made within the same document, the first loan disbursement request. (R. 105, Rule 29 and 33 Motion, Exhibit 39). This reasoning makes no logical sense.

By the Government's reasoning, this would mean that each separate amount of money sent to each individual vendor that was alleged to have been fraudulent should be a separate count: "there were two separate disbursements for distinct pieces of equipment to two separate companies in two different countries. That is, they were two separate loan transactions." (R. 106, Gov't Response Brief, p. 18.) Thus, according the Government's logic, the Government should have charged a count of fraud for each individual vendor that received an alleged fraudulent transfer. Aside from having no support in law, this reasoning is illogical and false.

As a preliminary matter, the Government concedes that both Count XII and XIII were made within the same document – the first disbursement request – and as a matter of law, only one count was procedurally proper. (R. 106, Gov't Response Brief, p. 18) ("…as to count 12, defendant allegedly made a false statement that a project cost for the Marble Mine was a Blockcutter for $596,000…Exhibit 100 at 3…With regard to count 13, defendant allegedly made a false statement that a project cost for the Marble Mine was two Faudi chainsaws…Exhibit 100 at 3). Both statements were made within the same document and are even on the same page of that document.

The Government's reliance on *United States v. Manafort*, 313 F. Supp. 3d 311 (D.D.C. 2018) to argue that the counts are not multiplicitous is simply misplaced. In *Manafort*, the alleged multiplicitous false statement charges fell under two different statutes. *Id.* at 314-15. ("Court Four alleges that defendant made misleading statements in two letters to the Department of Justice in violation of the Foreign Agents Registration Act ("FARA")…Count Five alleges that the same statements, made in the same two letters, also violated 18 U.S.C. § 1001(a)). As such, the court noted that "the test for multiplicity is not whether two counts are based on the same set of facts; rather, it is *whether the statutory elements of the two offenses are the same. Id.* at 314 (*emphasis added*); *see Blockburger v. United States, 284 U.S. 299, 304 (1932)* ("The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.")

Here, Counts XII and XIII charge false statements under the exact same statute, 22 U.S.C. § 2197(n), hence, the statutory elements are exactly the same. This is inapposite to the facts in *Manafort*, where "a willful omission of material fact [under 22 U.S.C. § 618(a)(2)] that renders a statement misleading would not constitute a violation of [the] section…" because "it is possible to violate [22 U.S.C. § 618(a)(2)] without violating section 1001…and neither party [had] pointed to any plain expression of Congressional intent in either statute that would override the *Blockburger* analysis." *Manafort*, 313 F. Supp. 3d at 315-16.

Because the charges stemmed from two different statutes, and the statutes' elements failed the *Blockburger* analysis, the court in *Manafort* held that resolution of multiplicity would be better resolved post-trial. *Id.* at 316. In contrast, in the instant case, it is clear that both Counts

XII and XIII, charged under the same statute, are multiplicitous and require no further analysis whatsoever. Thus, both counts cannot stand as a matter of law.

The Indictment is multiplicitous in charging Counts XII and XIII as separate counts, and is therefore, as a matter of law, prejudicial. Accordingly, and consistent with the arguments as set forth in his Rule 29 and 33 Motion as well as in the instant Reply, Doost should be subject to acquittal on Counts XII and XIII of the Indictment, or in the alternative, be granted a new trial.

### C. Gaspari Menotti is an Untrustworthy Source and the Admission of Its Foreign Documents Was in Error

The Gaspari Menotti records should not have been admitted as business records, and Doost's counsel at the time should have objected to their admission. The Government contends that although "the Gaspari Menotti documents are unique, it cannot be said that they were created in response to unusual or isolated events. Rather, they were created by Gaspari Menotti, at defendant's direction…" (R. 106, Gov't Response Brief, p. 21).

The Government concedes the documents were in fact: (1) *generated* rather than existing through a normal course of business; and (2) that the documents are in fact *unique*. The Government's argument is circular and unavailing. At the same time the Government concedes that the documents are in fact unique they argue that the documents "were not generated in response to unique events." *Id*. The documents are not self-authenticating business records, and should not have been admitted under the business record exception.

Further, without any support in law or fact, the Government argues that the documents could have been admitted under Federal Rule of Evidence 801(d)(2)(C) ("a statement that was made by a person whom the party authorized to make a statement on the subject") or (E) ("the statement was made by the party's co-conspirator during and in furtherance of a conspiracy"). FED. R. EVID. 801(d)(2).

Gaspari Menotti was not authorized to speak on Doost's behalf since the relationship was merely between a buyer and seller. Rule 801(d)(2)(C) "requires the declarant to have *specific authority* from a party to make a statement concerning a particular subject." *United States v. Bonds*, 608 F.3d 495, 502 (9th Cir. 2010) (*emphasis added*). There are some "certain relationships [that] do imply an authority to speak on certain occasions." *Hanson v. Waller*, 888 F.2d 806, 814 (11th Cir.1989) (stating that lawyers have implied authority to speak outside of court on matters related to the litigation). However, a seller-buyer relationship does not imply authority for the seller to speak on behalf of the buyer. *See Bonds*, 608 F.3d at 503. ("[t]he government's position is, in essence, that by authorizing [an athletic trainer] to act as one of his trainers, defendant implicitly authorized [the athletic trainer] to speak…on his behalf. The conclusion does not follow from the premise"). As here, where Doost simply purchased machinery from Gaspari Menotti, the seller-buyer relationship is not somehow transformed into an implied relationship where Gaspari Menotti is authorized to speak on Doost's behalf.

Nor was Gaspari Menotti a co-conspirator, as evidenced by the lack of any allegation of a conspiracy in the Indictment, and the documents proffered were not made in furtherance of any conspiracy. In order for statements under Rule 801(d)(2)(E) to be admissible, the Government must prove by *substantial independent evidence*, that: (1) a conspiracy existed; (2) that the declarant and the defendant against whom the co-conspirator's statement is offered were members of the conspiracy; and (3) the statement was made during the course and in furtherance of the objects of the conspiracy. *United States v. Jackson*, 627 F.2d 1198, 1219 (D.C. Cir. 1980) (*emphasis added*); *Bourjaily v. United States*, 483 U.S. 171, 175 (1987). Hearsay statements themselves "may not be the sole basis for" admissibility…there must be independent evidence of a conspiracy as well. *United States v. Beckham*, 968 F.2d 47, 51 (D.C. Cir. 1992). The mere

proximity between the parties or the fact that there exists a buyer-seller relationship "does not provide support for inferring that the parties "had the specific intent to further [a] common unlawful objective." *Id.* at 51, citing *United States v. Tarantino*, 846 F.2d 1384, 1392 (D.C.Cir.) (per curiam), cert. denied, 488 U.S. 867, 109 (1988).

Here, the relationship between Doost and Gaspari Menotti was merely that of a buyer and seller, respectively. Among the various vendors with whom Doost dealt, Gaspari Menotti was but one. *Beckham*, 968 F.2d at 51 ("evidence tends to show at most that [vendor was merely an] alternative source of supply; it provides scant basis for inferring that [the parties] were joint venturers in a criminal enterprise or had any sort of prior agreement—the essence of a conspiracy"). Further, occasional purchases from a vendor cannot be the basis for a conspiracy. *Id.*, citing *United States v. Morris*, 836 F.2d 1371 (D.C.Cir.1988).

Assuming *arguendo* that Gaspari Menotti aided Doost in carrying out the Government's allegations, "aiding and abetting is different from committing the independent crime of conspiracy." *Beckham*, 968 F.2d at 51. More so, if the Government truly believes that Gaspari Menotti was a co-conspirator, this view reinforces Doost's argument that Gaspari Menotti was an untrustworthy source. Notwithstanding, the Government could not have had the documents from Gaspari Menotti admitted under either Rule 801(d)(2)(C) or Rule 801(d)(2)(E).

The Gaspari Menotti documents should not have been admitted under the business records exemption and could not have been properly admitted under Rule 801(d)(2). These documents, and the testimony about these documents, constituted a not insignificant part of his trial and the Government's show of proof against him. Accordingly, and consistent with the arguments as set forth in his Rule 29 and 33 Motion as well as in the instant Reply, Doost should be granted a new trial.

### D. The Wartime Suspension of Limitations Act Does Not Clearly Apply to Toll the Running of the Statute of Limitations

The Wartime Suspension of Limitations Act ("WSLA") does not apply to the charges brought against Doost because the hostilities in Iraq and Afghanistan ended prior to the alleged allegations in the Indictment took place. In the alternative, even assuming arguendo that the WSLA could apply, it surely does not apply to the alleged false statement or money laundering counts because those offenses do not contain an "essential element" of fraud as required for application of the WSLA.

The statute of limitations is the "primary guarantee against bringing overly stale criminal charges" that might otherwise result in prejudice to a defendant. *United States v. Marion*, 404 U.S. 307, 322 (1971). This is so because they align with the "repose of society and the protection of those who may (during the limitation)…have lost their means of defence (sic)." *Id.* citing *Public Schools v. Walker*, 9 Wall. 282, 288 (1870). Further, the statutes "provide predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced." *Id.* These safeguards are even more pronounced in the criminal context, thus, "criminal statutes of limitation are to be liberally interpreted in favor of repose." *United States v. Habig*, 390 U.S. 222, 227 (1968); *Toussie v. United States*, 397 U.S. 112, 115 (1970).

The WSLA, codified at 18 U.S.C. § 3287, "is an excepting clause, and therefore to be narrowly construed…and ought not to be extended by construction to embrace so-called frauds not so denominated by the statutes creating offenses." *Bridges v. United States*, 346 U.S. 209, 216 (1953). These protections also serve a dual purpose in "encouraging law enforcement officials promptly to investigate suspected criminal activity." *Toussie*, 397 U.S. at 115.

### i. The WSLA Does Not Apply Because the Hostilities in Iraq and Afghanistan Ended Prior to the Dates On Which the Allegations in the Indictment Occurred.

The tolling provision of the WSLA applies "until three years after the termination of hostilities as proclaimed by the President or by a concurrent resolution of Congress." 18 U.S.C. § 3287. However, in light of the mandate imposed by the Supreme Court as to narrow construction and repose it is "incumbent on the court…to identify a clear demarcation point at which the tolling provisions of the Suspension Act cease to run." *United States v. Prosperi*, 573 F. Supp. 2d 436, 454 (D. Mass. 2008).

> Accordingly, the statute of limitations with respect to the Afghan conflict, expired on December 22, 2004. Similarly, on May 1, 2003, President Bush, while aboard the USS Abraham Lincoln, proclaimed that "[m]ajor combat operations in Iraq have ended. In the Battle of Iraq, the United States and our allies have prevailed. And now our coalition is engaged in securing and reconstructing that country." Consequently, with regards to the Iraq conflict, the statute of limitations expired on May 1, 2006.

> *Id*. at 455.

If this were not the case, the statute of limitations would continue to toll throughout the "duration of hostilities that may last a generation or more, the risk is too significant to ignore." *Boumediene v. Bush*, 553 U.S. 723, 729 (2008). This concern was reinforced by Senator Sessions and Senator Coburn, who stated as follows:

> The Wartime Suspension of Limitations Act was enacted after World War II and we can only assume that the language is intentionally limited to declared wars. A declared war is of a different nature than an undeclared military conflict which can be a much smaller affair that does not similarly affect the government's ability to build and prosecute war fraud cases. *If, as is potentially the case in the current conflicts with Iraq and Afghanistan, a President is hesitant to officially announce the end of hostilities, the statute of limitations will never start running*. This means contractors could remain subject to potential liability for criminal offenses (or investigations) for years, possibly a lifetime. Even if an official act declaring an end to hostilities is made, it may not happen for a very long time.

> S. REP. 110-431 at 7-8 (2008) (emphasis added).

Here, the Government's delay cannot be cured by the application of the WSLA which would fly in the face of Supreme Court precedent. The delay in the Government's prosecution did result in stale evidence; Doost and the Government were both unable to locate several witnesses, including Arash Basir, alleged to have been a partner of ECM. (PSR, ¶ 45). The delay also caused documents, e-mails, and various high-level workers from the Marble Mine and Marble Factory to dissipate, especially those located in Afghanistan where it is extremely difficult to navigate and locate certain individuals.

Allowing the WSLA to continue tolling indefinitely would allow the Government to lackadaisically prosecute crimes that might fall under the WSLA, creating a backlog of cases in an already demanding Government agency. The unlimited liability that would accrue could also dissuade contractors from bidding to assist during times of conflict, which would make the very crux of the WSLA superfluous. In light of Supreme Court precedent and *Prosperi*, the WSLA should not apply to any of the alleged counts under the untimely Indictment.

### ii. In the Alternative, The WSLA Only Applies to Crimes Whose Elements Contain as Fraud as an "Essential Ingredient"

Even should the Court find that the WSLA applies to the otherwise untimely Indictment, the false statement and money laundering counts are not covered and are still untimely. The WSLA only applies to offenses whose "essential ingredients" include fraud. Thus, the false statement and money laundering counts (Counts XII-XXIII) are not subject to statute of limitations exception by the WSLA.

The Government attempts to pigeon hole the Indictment's false statement and money laundering counts into the WSLA by contending that both offenses contain fraud as an "essential ingredient." (R. 106, Gov't Response Brief, pp. 29-32). However, the WSLA applies only to

offenses "involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not." 18 U.S.C. § 3287. This clause has been construed narrowly as "only where the fraud is of a pecuniary nature" and "should not be extended by construction" to offenses not enumerated within the statute. *Bridges*, 346 U.S. 209, 215 (1953) (holding that knowingly making a false statement under oath does not involve the defrauding of the United States in any pecuniary matter or in a manner concerning property, as such, the WSLA did not apply). This reasoning was based on the fact that the WSLA is "limited *strictly* to offenses in which *defrauding or attempting to defraud* the United States is an *essential ingredient of the offense charged*." *Bridges*, 346 U.S. 209, 221 (1953) (emphasis added).

Here, the Government contends that the WSLA applies to a false statement under 22 U.S.C. § 2197(n) and money laundering under 18 U.S.C. § 1956(a)(1)(B)(i), even though it is clear that neither offense contains fraud as an "essential ingredient." As fraud is not an "essential ingredient" in either charge, the WSLA does not apply.

### a. The WSLA Does Not Apply to Counts of False Statement Under 22 U.S.C. § 2197(n).

In false statement statutes, "fraud is not an essential ingredient." *Bridges*, 346 U.S. at 222. This is so because "[t]he offense is complete without proof of fraud, although fraud often accompanies it." *Id.* Thus, "even though the offense may be committed in a pecuniary transaction involving a financial loss to the Government, that fact, alone, *is not enough to suspend the running of the three-year statute of limitations*." *Id.* (emphasis added).

While the Government attempts to get around this through inserting fraud-adjacent language into the Indictment in this case, "the insertion in the indictment of the words 'procured by fraud' does not change the offense charged[, and]…the embellishment of the indictment does not lengthen the time for prosecution." *Id.* Rather, "it is the statutory definition of the offense

that determines whether or not the statute of limitations comes within the Suspension Act." *Id.* at 222-23.

The elements of a false statement under Section 2197(n) are as follows: (1) defendant made a false statement or report; (2) knowing the statement to be false; and (3) for the purpose of influencing an action by OPIC. 22 U.S.C. § 2197(n). Like the false statement in *Bridges,* a false statement offense under Section 2197(n) is complete when the statement is made, and no proof of a fraud is required.

The Government concedes as much: "[a]lthough as the Court's jury instructions made clear, the government is not required to prove fraud to prove a violation of Section 2197…" (R. 106, Gov't Response Brief, p. 30). Even though the statement is alleged in the Indictment to accompany fraud, the statutory definition is devoid of any inclination of fraud. *United States v. Grainger*, 346 U.S. 235, 243 (1953) ("[t]he false statement clause contains no such ingredient"). The Government's reliance on *Grainger* and *United States v. Wells Fargo Bank, N.A.*, 972 F.Supp.2d 593, 610 (S.D.N.Y. September 24, 2013) is in error. The court can and does easily distinguish between a false claim charge and a false statement charge, by the nature of the elements required.[2] Here, the elements of the actual charge, not just the language the Government has added into its Indictment, do not require fraud. As such, the WSLA does not apply. *United States ex rel. Landis v. Tailwind Sports Corp*., 51 F. Supp. 3d 9, 43 (D.D.C. 2014), on reconsideration in part, 160 F. Supp. 3d 253 (D.D.C. 2016), and clarified on denial of reconsideration, No. 1:10-CV-00976 (CRC), 2016 WL 3197550 (D.D.C. June 8, 2016) ("it is

---

[2] "The substantive offenses here charged include the making of claims upon the Government for payments induced by knowingly false representations – constituting violations of the false claims clause of the False Claims Act. The statement of the offenses here carries with it the charge of inducing or attempting to induce the payment of a claim for money or property involving the element of deceit that is the earmark of fraud. The false statement clause contains no such ingredient." *Grainger*, 346 U.S. at 242–43.

clear in this Circuit that civil FCA actions under the modern version of the statute do not require proof of fraud as an 'essential element,' which is required by the holdings in *Bridges* and *Grainger* for the WSLA to apply").

This line of reasoning comports squarely with Supreme Court precedent. For instance, materiality of the falsehood *is* an element of the federal mail fraud, wire fraud, and bank fraud statutes. *Neder v. United States*, 527 U.S. 1, 25 (1999). However, under 22 U.S.C. § 2197(n), which language is modeled after 18 U.S.C. § 1014, materiality of falsehood is *not* an element of the offense of making a false statement on a loan application. *United States v. Wells*, 519 U.S. 482, 490 (1997). Nor is a "risk of loss" an element required for the completion of an offense under 22 U.S.C. § 2197. *Elliott v. United States*, 332 F.3d 753, 764 (4th Cir. 2003) ("[t]he term 'defraud' signifies 'the deprivation of something of value by trick,'…thus implying the need to demonstrate a risk of financial loss. "Influence," on the other hand, bears no such connotation"). Accordingly, fraud is not an "essential ingredient" of 22 U.S.C. 2197(n) and the WSLA does not apply.

### b.    The WSLA Does Not Apply to Counts of Money Laundering

The Government points to a Northern District of Florida case as support for its contention that, somehow, fraud is an "essential ingredient" of the offense of money laundering. (R. 106, Gov't Response Brief, p. 31) That case, however, never expressly addressed the "essential ingredient" test required by the Supreme Court, and did not perform any analysis of the underlying counts to determine whether the WSLA applied.[3] *United States v. Anghaie*, 2011 WL 720044 (N.D. Fl. February 21, 2011). Upon that analysis, it becomes clear that the WSLA does

---

[3] Even the briefs by both the Defendant and the Government in the underlying argument behind the Order cited do not address an analysis of *why* the WSLA should or should not apply to each count and the elements required for each, focusing almost exclusively on the existence and dates of application of the WSLA. *United States v. Anghaie*, 2011 WL 720044 (N.D. Fl. February 21, 2011), Case 1:09-cr-00037-MW-GRJ, R. 111, R. 112, R. 113.

not apply, since fraud is not an "essential ingredient" of money laundering—especially under the concealment clause, 18 U.S.C. § 1956(a)(1)(B)(i), under which Doost is charged.

The elements of money laundering, under 18 U.S.C. § 1956(a)(l)(B)(i), are as follows: (1) That the defendant conducted or attempted to conduct a financial transaction; (2) which the defendant knew involved the proceeds of unlawful activity; (3) with the intent to conceal or disguise the nature, location, source, ownership, or control of the proceeds of unlawful activity. *United States v. Odiodio*, 244 F.3d 398, 403 (5th Cir. 2001). Further, "a money-laundering conviction under the concealment prong involves conduct that was entirely unnecessary to the completion of the underlying specified unlawful activity." *United States v. Esquenazi*, 752 F.3d 912, 936 (11th Cir. 2014). Thus, "funneling money through shell corporations was not necessary" for Doost to have completed any of the alleged fraud offenses, "[i]t just made it less likely that conduct would be uncovered by "conceal[ing] the nature[ and] source…of the proceeds…precisely the *distinct* type of conduct 18 U.S.C. § 1956(a)(1)(B)(i) criminalizes. *Id*. For this reasoning, and the same reasoning in Section III(D)(ii)(a) *supra*, fraud is not an "essential ingredient" of money laundering and the WSLA does not apply.

## CONCLUSION

As a matter of law, this Court should enter a judgment of acquittal on Count XV as the exchange was fundamentally ambiguous.

Looking to the totality of the evidence presented (and not presented), Doost received ineffective assistance of counsel on many fronts which prejudiced him during trial and violated his basic Sixth Amendment right to *competent* counsel. *Strickland*, 466 U.S. at 695. The ineffective assistance received was the common denominator in every count Doost was found

guilty on. Accordingly, Doost should be subject to acquittal on all counts, or in the alternative, a new trial.

The Indictment is multiplicitous in multiple respects, documents were admitted into evidence without any rational basis for being so admitted, and the Wartime Suspension of Limitations Act does not apply to the charges. Doost's verdict should be vacated and the Indictment dismissed.


Dated: March 19, 2019      Respectfully Submitted,

            /s/ Glenn Seiden
            Glenn Seiden, *pro hac vice*
            SEIDEN NETZKY LAW GROUP, LLC
            333 South Wabash Avenue, Suite 2700
            Chicago, Illinois 60604
            312.236.3060
            Illinois Bar ID 2543761
            gseiden@snlgllc.com
            bstevens@snlgllc.com

            /s/ Andrew M. Friedman
            Andrew M. Friedman
            Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
            12505 Park Potomac Avenue, 6th Floor
            Potomac, MD 20854
            301.231.0942
            Bar ID 462131
            afriedman@shulmanrogers.com

**CERTIFICATE OF SERVICE**

I, Glenn Seiden, an attorney, do hereby certify under penalties of law that, in accordance with FED. R. CIV. P. 5 and the General Order on Electronic Case Filing (ECF), I caused a copy of the **REPLY IN SUPPORT OF COMBINED RULE 29 AND 33 MOTION** to be served upon the all the named attorneys of record by CM/ECF filing methods on this the 19th day of March, 2019.

/s/ Glenn Seiden
Glenn Seiden