IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Criminal No. 1:17-CR-00109 (APM) |
| ADAM DOOST, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT ADAM DOOST'S SUR-REPLY TO GOVERNMENT'S OBJECTIONS TO COMBINED RULE 29 AND 33 MOTIONS**

Defendant, ADAM DOOST ("Doost"), by and through his attorneys, SEIDEN NETZKY LAW GROUP, LLC., hereby submits this sur-reply to the Government's Opposition to Defendant's Combined Federal Rule 33 and 29 Motions and states as follows:

## I. INTRODUCTION

On June 7, 2017, Doost was charged by Indictment (R. 1) with the three counts of Major Fraud against the United States in violation of 18 U.S.C. §§ 1031(a) and 2; eight counts of Wire Fraud in violation of 18 U.S.C. § 1343, two counts of False Statement on Loan Application or Extension in violation of 22 U.S.C. § 2197(n) and 18 U.S.C. § 2; two counts of False Statement on Loan Application or Extension in violation of 22 U.S.C. § 2197(n); eight counts of Money Laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2; and forfeiture allegations under 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1) and 28 U.S.C. § 2461(c).

Doost pled not guilty to all charges. After a jury trial, on September 24, 2018, the jury found Doost guilty of Counts I – XX in the indictment and not guilty of Counts XXI – XXIII after deliberating for 3.5 days. (R. 53).

1

Following the jury's verdict, Defendant filed a motion pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure, seeking entry of judgment of acquittal or, in the alternative, a new trial. On April 10, 2019, this Court denied in part and deferred in part, Defendant's Rule 29 and 33 motions until further briefing on the applicability of Sections 2 and 3 of the Wartime Suspension of Limitations Act 18 U.S.C. § 3287 ("WSLA") to the charges of false statements and money laundering. (R. 129).

## II. ARGUMENT

### A. Clause 2 of the WSLA Does Not Apply to Toll the Statute of Limitations Since Money, or More Narrowly, Loan Proceeds are Not "Real or Personal Property"

The Government contends that Clause 2 of the WSLA applies to toll the statute of limitations for Counts XII – XIII and XIV – XV, which charge False Statements on a Loan Application or Extension in violation of 22 U.S.C. § 2197(n) and Counts XVI – XXIII which charge Money Laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i). However, Clause 2 of the WSLA is not nearly as broad as the Government contends. The plain language of the WSLA, including Clause 2, and its enacting purpose, which was to curb the fraudulent procurement of war surplus "real or personal property," does not apply to money or loan proceeds.

Clause 2 of the WSLA tolls the statute of limitations for any offense "committed in connection with the acquisition, care, handling, custody, control or disposition of any *real or personal property* of the United States." (emphasis added). The current language codified in Clause 2 of the WSLA was added, by amendment, to deal "with offenses connected with the handling of property under the Surplus Property Act of 1944, 58 Stat. 781." *United States v. Grainger*, 346 U.S. 235, 246 (1953). The intent and purpose of which was "to facilitate and regulate the orderly disposal of surplus property of the United States, including the giving of an opportunity to returning veterans to establish themselves in business, agriculture, or professional

life." *United States v. Weaver*, 207 F.2d 796, 798 (5th Cir. 1953); *United States v. Guzzone*, 168 F. Supp. 711, 714 (E.D.N.Y. 1958 ("[t]he object of the Surplus Property Act was to restrict the *sale of property* to veterans for their use") (emphasis added).

Looking to the plain language codified in Clause 2, the natural reading of the statute is even narrower than the language used in cases discussing the purposes of Surplus Property Act, *supra*. Section 2 enumerates *only* "real or personal property" and not an all-encompassing term "property." Thus, money or loan proceeds are not contained within the definitions of "real or personal property." *E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 20 (D.D.C. 2014) ("[t]he definition of chattel includes *real or personal property*; money is excluded") (emphasis added); *United States v. Johnson*, 875 F.3d 360, 367 (7th Cir. 2017) (holding "real or personal property" did not include intangible economic loss under the Animal Enterprise Terrorism Act, 18 U.S.C. § 43). These interpretations are consistent with the plain reading of the statute and the purposes for which Clause 2 was added—the disposal of tangible *real* or *personal property*. *United States v. Lurie*, 222 F.2d 11, 15 (7th Cir. 1955) (holding that as to Clause 2 of the WSLA, "Congress was thinking about the disposition of surplus property when it passed the amendment"). These interpretations are consistent with Clause 2's limiting terms "acquisition, care, handling, custody, control or disposition" which signify that the clause references *tangible* "real or personal property" and not money or loan proceeds.

Assuredly, The Surplus Property Act did not contemplate disposing of surplus *money or loan proceeds* after the war effort. Had Congress intended for Clause 2 to apply to all forms of property, including money, it would have legislated so, as it did in other statutes such as 18 U.S.C § 641—the underlying offense in the case for which the Government cites in *United States v.*

*Chamberlain*, No. 5:14-CR-128-2-H, 2018 WL 2994280 (E.D.N.C. June 14, 2018). The relevant portion of 18 U.S.C § 641 reads as follows:

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, *money*, or thing of value of the United States or of any department or agency thereof, or *any property* made or being made under contract for the United States or any department or agency thereof. (emphasis added).

In *Chamberlain*, the court's flawed conclusion that Clause 2 applied to "funds" was based on *United States v. Arnold*, 991 F.Supp.2d 1307 (S.D. Ga. 2014). In *Arnold*, the court took to understand that the all-inclusive wording of 18 U.S.C § 641, somehow, fit within the narrow definitions of "real or personal property" enumerated in Clause 2.[1] *Id*. (stating that "[o]ffenses under 18 U.S.C. § 641 fall under WSLA 'as they involve the acquisition, control, or disposition of United States personal property'"); *see also* 18 U.S.C § 1361 ("whoever willfully injures or commits any depredation against *any property* of the United States, or of any department or agency thereof, or *any property* which has been or is being manufactured or constructed for the United States, or any department or agency thereof, or attempts to commit any of the foregoing offenses, shall be punished . . .").

Congress did not include "money" or "any property" in the WSLA but specifically enumerated only "real or personal property." Since the WSLA is an exception to the statute of limitations, Clause 2 must be construed in favor of repose. *Kellogg*, 135 S. Ct. at 1978. To accept a broader interpretation of Clause 2 "would require [the Court] to expand the scope of the

---

[1] Under 18 U.S.C § 641, the Government must prove that "(1) that the *money or property* described in the indictment belonged to the United States or an agency thereof and had a value in excess of [$1,000] at the time alleged; (2) that the *property* lawfully came into the possession or care of the defendant, and the defendant fraudulently appropriated the *money or property* to his own use or the use of others; and (3) that the defendant did so knowingly and willfully with the intent either temporarily or permanently to deprive the owner of the use of the *money or property* so taken." *Arnold*, 991 F. Supp. 2d at 1311 (emphasis added). In further contrast, the false statement and money laundering charges, here, do not "require that a defendant actually obtain money from the United States, an element of the crime prohibited by 18 U.S.C. § 641 is that a defendant actually embezzled "any record, voucher, money or thing of value of the United States." *United States v. Verclas*, No. GJH-18-160, 2019 WL 95148, at *5 (D. Md. Jan. 3, 2019).

4

Suspension Act beyond any court's previous constructions of the statute." *United States v. DeLia*, 906 F.3d 1212, 1221 (10th Cir. 2018) (holding the WSLA should be narrowly construed and "any ambiguity should be interpreted in favor of repose") citing *Kellogg*, 135 S. Ct. at 1978.

Lastly, and most importantly, the Supreme Court has already directly spoken to the narrow breadth of Clause 2 in *Kellogg*. There, the Supreme Court discussed each of the three clauses in the WSLA, their respective functions, and Congress' intent in enacting them:

> Congress expanded the statute's coverage beyond offenses "involving defrauding or attempts to defraud the United States" [Clause 1] to include other offenses pertaining to Government contracts [Clause 3] *and the handling and disposal of Government property*." [Clause 2]

*Id*. at 1975. (emphasis added).

The Supreme Court has made clear that Clause 2 does not apply to the "handling and disposal of" money or loan proceeds but only tangible "real or personal property." This is consistent with the logical reading of the WSLA, Congress' intention, and the Supreme Court's interpretations.

Accordingly, Clause 2 of the WSLA does not apply to money or loan proceeds, as pertinent here, and the Government's indictment was untimely. Thus, as a matter of law, the false statements and money laundering counts should be subject to acquittal as they are time barred.

  **a. In the Alternative, Clause 2 Does Not Apply Because Title to the Loan Proceeds Passed Upon Execution of the OPIC Promissory Note**

"Where a loan is made upon a promissory note, title to the proceeds passes to the borrower when he signs the note." *State v. Gillespie*, 41 Wash. App. 640, 645 (1985) citing UCC § 3-201; *see also State v. Berman*, 50 Wash. App. 125, 131 (1987). Even absent disbursal of the loan proceeds, the fact that "title to [a promissory note] could pass by delivery without indorsement is settled beyond dispute." *Meuer v. Phoenix Nat. Bank*, 94 A.D. 331, 334, 88 N.Y.S. 83, 86 (App.

Div. 1904). Thus, "[t]o conclude that the forged indorsement was sufficient to pass legal title, but insufficient to transfer the right of the payee to collect the proceeds, would deprive the transfer of 'title' of all significance except as regards the right to retain a scrap of worthless paper." *United States v. Guar. Tr. Co. of New York*, 293 U.S. 340, 348 (1934).

Here, Doost signed the OPIC Promissory Note before making any of the alleged false statements or alleged money laundering. Thus, title to the loan proceeds had passed to Doost *before* any alleged offense was committed in connection with the "acquisition, care, handling, custody, control or disposition of any real or personal property of the United States." Since there was no offense committed when Doost signed the note and acquired title to the loan proceeds, the WSLA does not apply and the Government's indictment was untimely. Thus, as a matter of law, the false statements and money laundering counts should be subject to acquittal as they are time barred.

    **B. Clause 3 Does Not Apply Since the Purposes of OPIC's Private Investments and Doost's Marble Mine Were Not Connected to or Related to Any Prosecution of War or Authorized Use of Military Force**

The Government contends that Clause 3 of the WSLA applies to toll the statute of limitations because Doost, a private civilian, contracted to receive funds from OPIC to be used in a private marble mining endeavor, that happened to be located in Afghanistan. Doost did not take on any responsibilities, or contractual obligations, to the United States Government for the purposes of prosecuting war or that was in any way connected with any Authorized Use of Military Force. Doost's marble endeavor was purely private. Further, Doost's funds were loaned from the Overseas Private Investment *Corporation*. Thus, OPIC's goal, as is any corporation's, was to make money. More simply, the overall arching purpose for which OPIC granted a loan to Equity Capital Management ("ECM") was a return on a *private* investment, a purely private endeavor. Lastly,

Doost's mining operation was in pursuit of peace, not war, and was not connected to any Authorized Use of Military *Force*.

The enacting legislation which provided the for Authorized Use of Military Force in Afghanistan states as follows: the "President is authorized to use all necessary and appropriate *force* against those nations, organizations, or persons *he determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001*, or harbored such organizations or persons, in order to prevent any future acts of international terrorism against the United States by such nations, organizations or persons." Pub. L. No. 107–40, 115 Stat. 224. The purpose of declaring a war or for authorizing the use of military force, is not only to define precise objectives, but also to:

> make it known of or certain *that the war was not a private undertaking* but was to be waged by the *will of both peoples or of the heads of the peoples*. On this fact were based the special features which are not part of a war against pirates, or of one that a king wages against his subjects....

*United States v. Prosperi*, 573 F. Supp. 2d 436, 451 (D. Mass. 2008) citing HUGO GROTIUS, THE LAW OF WAR AND PEACE 292–293 (Classics Club: Walter J. Black, Inc. 1949).

Doost's marble mining operation had absolutely nothing to do with the use of "force against nations, organizations, or persons" that "planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001." *Prosperi*, 573 F. Supp. 2d at 451. Any nominal effect that Doost's private endeavor to build and grow a marble mine may have had on the use of force, was merely collateral. It cannot be said that *any* private business venture in Afghanistan which received OPIC funds, during an Authorized Use of Military Force, happens to be connected with or related to the use of force due to mere proximity. This reasoning would

7

certainly expand the scope of the WSLA beyond the intentions of Congress. As the Supreme Court noted in *Kellogg*, Clause 3 is properly attuned to "Government contracts" which supply goods or services that support the military, not private investment vehicles for which a Government *agency* seeks a return on investment. *Kellogg*, 135 S. Ct. at 1975.

The definitions of "war" support the above contentions. "[A state of war] exists whenever there is a resort to armed *force* between States or protracted armed *violence* between governmental authorities and organized armed groups or between such groups within a State." *Prosperi*, 573 F. Supp. 2d at 451 citing *Prosecutor v. Tadic, Judgment*, Case No. IT–94–1–A, ¶ 70. (International Criminal Tribunal for Former Yugoslavia (ICTY) App. Chamber, July 15, 1999); *see also* THE OXFORD ENGLISH DICTIONARY 887 (2d ed. 1989) ("War: 'Hostile contention by means of armed forces, carried on between nations, states, or rulers, or between parties in the same nation or state; the employment of armed forces against a foreign power, or against an opposing party in the state.'").

Doost's business operations in Afghanistan wholly lack any indications of the pursuit violence, force, or armed conflict. To the contrary, Doost was a peacemaker clothed with nothing but the private pursuit of a business endeavor. *Contra United States v. Wilson*, No. 2:18-CR-00136, 2018 WL 5260806, at *3 (W.D. La. Oct. 22, 2018) (finding Clause 3 to apply there was "a *rational nexus*" between [defendant's] conduct and war-time activities at Fort Polk. As stated by the government, Fort Polk is a military installation of the United States Army. The Fort Polk JRTC prepares, deploys, sustains and redeploys trained and ready forces of the U.S. Army, including active duty, National Guard and the Army Reserve") (emphasis added).

Here, there was no "rational nexus" between Doost's conduct and the Authorized Use of Military Force. The marble mine was a wholly private entity employing private citizens to perform

8

purely private tasks. The marble mine did not train or prepare combatants for the purposes of employing any *force* and was not connected to supplying services or goods towards any war efforts. In line with this reasoning are *all* of the cases cited by the Government in which there was a *direct relationship* to the war effort. *United States v. Sack*, 125 F.Supp. 633 (S.D.N.Y 1954) ("furnishing of false financial statements to the War Contracts Price Adjustment Board in connection with renegotiation" fell under Clause 3 of the WSLA); *United States v. Jucutan*, 756 F. App'x 691, 692 (9th Cir. 2018) (defendant had "contracted with the Army Reserve to administer its recruiting assistance program, AR-RAP" thus "AR-RAP had a direct connection with or relationship to the use of the Armed Forces"); *United States v. Guerrero*, Case No. 1:15-cr-00050 (D. Guam 2016) ("the offenses charged in the Indictment are committed in connection with a contract between the U.S. Army National Guard Bureau and a company called Document & Packaging Brokers, Inc. ("Docupak"). Docupak administers the Guard Recruiting Assistance Program, known as G-RAP, which is connected with or related to the authorized use of the Armed Forces"); *United States v. Melendez-Gonzalez*, 892 F.3d 9, 12 (1st Cir. 2018) (same); *United States v. Costas-Torres*, 255 F. Supp. 3d 322, 325 (D.P.R. 2017) (same); *United States v. Reppart*, No. 4:15 CR 189, 2015 WL 6437192, at *1 (N.D. Ohio Oct. 22, 2015) (same).

In sum, counsel for Defendant has been unable to find one case that has held that purely private citizens who performed purely private business activities, unconnected with supplying services or goods to support the war effort, falls under Clause 3 of the WSLA. To the contrary, all of the cases that have provided analyses under Clause 3, and cited by the Government, found conduct sufficient under Clause 3 *only* since the contracts were directly connected or related to supplying the Army, thus, having a relationship to the Authorized Use of Military Force. For these

reasons, the WSLA does not apply to the untimely charges of false statements and money laundering, and those counts should be dismissed.

  **C. Doost's Trial Counsel Was Ineffective as Evidenced by the Court's Conclusion that Clause 1 of the WSLA Did Not Apply and the Court's Interest in Further Briefing Regarding Clauses 2 and 3**

  Had Doost's counsel performed thorough and proper legal research, rather than relying on the face of WSLA, he would have found that Clause 1 of the WSLA did not apply since that conclusion required an "elements test" analysis, as stated in *DeLia* and other cases.[2] Had trial counsel looked to District of Columbia and Supreme Court precedent interpreting Clause 2 of the WSLA he would have understood that "real or personal property" was a much narrower term which does not include "money." Further, that the Supreme Court had interpreted Clause 2 as relating to the "handling and disposal," not of money, but of tangible personal property. Lastly, trial counsel did not attempt *any* research as to the application of Clause 3.[3] For these reasons, Doost received ineffective assistance of counsel. Trial counsel's performance fell below an objective standard. This deficient performance prejudiced Doost in having to go forward with trial, and before a jury, with twelve counts attached to his indictment that were ultimately untimely. *United States v. Clarridge*, 811 F.Supp. 697, 702 (D.D.C. 1992).

### III. CONCLUSION

  For the reasons set forth above, the WSLA does not apply to the charges of false statements or money laundering. Trial counsel's failure to challenge the untimely charges, which would have

---

[2] "In my analysis, I believed that subdivision (1) was applicable to Counts 16-23 (Money Laundering) because the unlawful specified activity element for money laundering was based on the wire fraud counts, which I believed satisfied the fraud element. So, my view was if the government failed to prove wire fraud, then they could not prove up the essential elements of the money laundering counts." **Exhibit 1**, p. 4.

[3] "I did not conduct an analysis on subdivision (3) as being applicable having believed that subdivision 1 and/or 2 were applicable." **Exhibit 1**, p. 5.

resulted in the dismissal of twelve counts, prejudiced Doost in violation of his Sixth Amendment right to competent counsel. Accordingly, Doost should be subject to acquittal on all counts of false statements and money laundering and awarded a new trial.

Dated:  May 1, 2019                                                            Respectfully submitted,

/s/ Glenn Seiden
Glenn Seiden
SEIDEN NETZKY LAW GROUP, LLC
333 S. Wabash Avenue – Suite 2700
Chicago, Illinois  60604
Telephone:  312-236-3060
Fax:  312-236-3061
Email:  gseiden@snlgllc.com

*Certificate of Service*

I, Glenn Seiden, do hereby certify under penalties of law that in accordance with Fed.R.Civ.P.5 and the General Order on Electronic Case Filing (ECF), I caused a copy of the above-titled motion to be served upon the all the named attorneys of record by CM/ECF filing methods on this the 1st day of May, 2019.

/s/ Glenn Seiden
Glenn Seiden