**AFFIDAVIT OF KEVIN B. ROSS**

| | |
|---|---|
| **STATE OF TEXAS** | § |
| | § |
| **COUNTY OF DALLAS** | § |

My name is Kevin B. Ross, I am a licensed attorney in Texas. My bar number is 24033020. I was retained to represent Mr. Azam "Adam" Doost in Cause No. 5:16-cr-03 (4), first at his initial appearance and detention hearing in the Northern District of Texas (Dallas Division), and later for purposes of trial in Cause No. 1:17-cr-00109-APM styled *USA v. Azam Doost* in the District of Columbia.

Mr. Doost has alleged ineffective assistance of counsel based on my representation of him. On April 10, 2019, the Court issued an Order seeking evidence to answer the question why trial counsel did not challenge the false statements and money laundering charges on limitations grounds. I am submitting this Affidavit to provide the basis for why I did not file a pretrial motion to dismiss the false statement charges (Counts 12-15) and the money laundering charges (Counts 16-23) based on limitations grounds.

I.   **Background:**

I have been practicing federal criminal defense for 17 years. I was licensed to practice law in the State of Texas in November 2001. I began my legal career at the Federal Public Defender's Office for the Northern District of Texas in 2001. At the end of 2003, I decided to enter private practice and joined a highly respected group of federal and state criminal defense attorneys and continued handling federal and state criminal cases at the trial, appeal and post-conviction stages.

On December 31, 2011, I was Board Certified in Criminal Law by the Texas Board for Legal Specialization. I am licensed to practice in the following jurisdictions:

- State of Texas
- Northern District of Texas
- Southern District of Texas
- Western District of Texas
- Eastern District of Texas
- 5th Circuit Court of Appeals
- *Pro Hac Vice* District of Columbia 2017

I am on the CJA Panel for the Northern District of Texas, Eastern District of Texas, and for the United States Court of Appeals for the Fifth Circuit. My experience in handling federal cases involve, among others, Bank Fraud, Wire Fraud, Money Laundering, False Statements, Visa

Fraud, Drug cases, RICO cases, firearms offenses, etc. I have also handled and been appointed to represent defendants on 28 U.S.C. § 2255 Motions.

## II.     Representation of Mr. Doost

On June 15, 2017, I was retained by Adam Doost for the limited purpose of representing him at his Initial Appearance and Detention Hearing in the Northern District of Texas. The Government was seeking to detain him as a flight risk from charges coming out of the District of Columbia. On June 16, 2017, Mr. Doost was released pending trial with conditions of bond.

On June 22, 2017, Mr. Doost retained me to represent him on the 23-Count Indictment issued by the federal grand jury in the District of Columbia. On July 13, 2017, Mr. Doost and I appeared before the Honorable Amit Mehta for Mr. Doost's arraignment. Mr. Doost was continued on his pretrial release conditions, and he traveled back to California.

On or about October 2017, I brought in attorney Tiffany Talamantez as co-counsel to assist with organizing and reviewing the discovery and ultimately preparing the case for trial. I remained lead attorney responsible for trial strategy decisions and the presentation of the case at trial.

On September 11, 2018, trial began and on September 21, 2018, the jury returned a guilty verdict on Counts 1-20 and a not guilty verdict on Counts 21-23.

On November 5, 2018, the court granted trial counsel's motion to withdraw, and Mr. Doost retained new counsel to take over his post-conviction motions and sentencing matters.

## III.    Trial Counsel's Decision to Not Challenge the False Statements and Money Laundering Charges on Limitation Grounds

Undersigned counsel has reviewed the post-trial motions field by Mr. Doost, the Government's responses thereto and this Court's Memorandum Opinion and Order (Dkt.#129).

- **Question:**
  - Why did trial counsel not challenge the false statements and money laundering charges on limitations grounds?

- **Answer:**
  - I, as trial counsel, believed that the WSLA applied to all counts in the Indictment, including the false statements and money laundering charges; and therefore, I did not file a pretrial motion to dismiss based on the statute of limitations.

- **Counsel's Analysis:**

When I was initially retained for the limited purpose of the detention hearing, prior to the hearing, I reviewed the Indictment and looked at the statute of limitations issue for each count given that the dates alleged were older. Wanting to develop a statute of limitations defense, I cross-examined FBI Agent John Longmire, under oath at the detention hearing, to establish a

timeline of the offense dates for the charges seeking to build a statute of limitations defense early on in the case. (Detention Hearing Transcript, Dkt #10-2, pp. 15-18, Attachment A).

During the argument portion of the detention hearing, the government informed the court that Mr. Doost's indictment was being prosecuted under the WSLA which suspended the statute of limitations. Specifically, AUSA Candina Heath argued the following to the U.S. Magistrate Judge:

> I understand from the questioning by the defense that one of the issues that they are potentially going to raise concerns the statute of limitations. Well, this case is being prosecuted under the Wartime Suspension of Limitations Act, which suspends any statute of limitations for fraud or attempted fraud against the United States or any agency thereof in any manner. And this is 18 U.S.C. section 3287. So there is not a statute of limitations problem, which is, I feel that the first line of questioning for the defense was going to. So that is not an issue.
>
> This case is a very real case and is being prosecuted by the criminal division in Washington, D.C. and we would request that the defendant be detained pending the trial in this case.

(Detention Hearing Transcript, Dkt #10-2, p. 48, Attachment B).

This was the first time that I had encountered the WSLA. It was at this time, early on in the case, that I looked at the WSLA statute. There are three different subdivisions to the WSLA:

> When the United States is at war or Congress has enacted a specific authorization for the use of the Armed Forces, as described in section 5(b) of the War Powers Resolution (50 U.S.C. 1544(b)), the running of any statute of limitations applicable to **any offense**:
>
>    (1) involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not, **or**
>
>    (2) committed in connection with the acquisition, care, handling, custody, control or disposition of any real or **personal property** of the United States, **or**
>
>    (3) committed in connection with the negotiation, procurement, award, performance, payment for, interim financing, cancelation, or other termination or settlement, of any contract, subcontract, or purchase order which is connected with or related to the prosecution of the war or directly connected with or related to the authorized use of the Armed Forces, or with any disposition of termination inventory by any war contractor or Government agency, shall be suspended until 5 years after the termination of hostilities as proclaimed by a Presidential proclamation, with notice to Congress, or by a concurrent resolution of Congress.

> Definitions of terms in section 103 of title 41 shall apply to similar terms used in this section. For purposes of applying such definitions in this section, the term "war" includes a specific authorization for the use of the Armed Forces, as described in section 5(b) of the War Powers Resolution (50 U.S.C. 1544(b)).

18 U.S.C.A. § 3287 (West)(emphasis added).

Mr. Doost was set to be arraigned in Washington, D.C. on July 13, 2017. Prior to leaving for Washington, D.C., I contacted the government's lead counsel, AUSA Daniel Butler, and asked for some time to visit with him after Mr. Doost's arraignment hearing. During my meeting with AUSA Butler, I raised the statute of limitations issue and the WSLA. AUSA Butler provided additional background on the WSLA, and we discussed why the government believed it would apply, if challenged.

Upon return to my office, I looked into the WSLA more closely and determined the following:

- The WSLA was applicable because hostilities had not subsided and there was not a formal declaration to the end of hostilities in Afghanistan as required.

- Next, I asked did one or more of the three subdivisions apply? I determined that under the subdivision (1) and subdivision (2), Counts 1-3 (Major Fraud against the United States) and Counts 4-11 (Wire Fraud) applied because the element of fraud existed in these offenses.

- **What about the False Statement Counts and Money Laundering Counts?** In my analysis, I believed that subdivision (1) was applicable to Counts 16-23 (Money Laundering) because the unlawful specified activity element for money laundering was based on the wire fraud counts, which I believed satisfied the fraud element. So, my view was if the government failed to prove wire fraud, then they could not prove up the essential elements of the money laundering counts.

    I also believed the subdivision (2) applied to the false statement and money laundering charges because subdivision (2) stated "**any offense**", . . (2) committed in connection with the acquisition, care, handling, custody, control or disposition of any real or **personal property** of the United States." My understanding of subdivision (2) was that it covered "any offense" (including money laundering and false statements) that were "committed in connection with the acquisition, care, handing, custody, control or disposition of any . . . personal property (i.e. money) of the United States." As such, my analysis was that OPIC was an agency of the United States that had loaned money (personal property) - $15.8 million dollars to ECM. I believed the offenses, as charged, were in connection with the acquisition, care, handling, custody, control or disposition of personal property of the United States, that being the money loaned to ECM by OPIC. Looking at the false

4

statement counts 12-15, it is clear that the offense alleged false statements being made *for the purpose of influencing the action of OPIC with respect to a loan* (i.e. money) or any change or extension of the loan. It was my belief that subdivision (2) would be applicable because the false statements, as alleged, were connected with the acquisition and disposition of personal property (money) of the United States (i.e., OPIC being an agency of the United States).

In like manner, money laundering was also "any offense" that was connected with the acquisition, care, handling, control or disposition of the money that OPIC loaned to ECM. The money laundering offenses, as alleged, would have been connected to how the loan proceeds were handled, controlled and disposed of by ECM.

- o   I did not conduct an analysis on subdivision (3) as being applicable having believed that subdivision 1 and/or 2 were applicable.

## IV.     Conclusion

Based on this analysis, I decided not to challenge the money laundering or false statements counts based on limitations grounds. Having reviewed the WSLA statute and the Indictment, I believed that the WSLA applied and challenging any of the counts on limitations ground would not have been successful. For the reasons stated above, I made the decision to not challenge any of the counts in the Indictment, including the false statements and money laundering counts on limitations grounds pretrial.

**Attorney's Declaration:**

I, Kevin B. Ross, affirm, under penalty of perjury, that the above statements contained in this affidavit are true and correct to the best of my recollection.

_____
KEVIN B. ROSS
State Bar of Texas Card No. 24033020

LAW OFFICE OF KEVIN B. ROSS, P.C.
8150 N. Central Expy
Suite M2070
Dallas, Texas 75206
(214) 731-3151
Fax (800) 952-2823
kbr@rosscrimlaw.com

# ATTACHMENT A

| | | |
|---|---|---|
| 2:30:47 | Kevin Ross: | Okay.  Now, you're familiar with the indictment, of course.  Is that correct? |
| 2:30:52 | Agent Longmire: | Yes, sir. |
| 2:30:53 | Kevin Ross: | And would you agree with me that the charges in the indictment really all stem from this one loan transaction? |
| 2:31:01 | Agent Longmire: | It was three loan transactions but one overall loan. |
| 2:31:05 | Kevin Ross: | Right, so there was one loan, $15,800,000, and then -- but all the counts and charges in the indictment stem from that one loan, correct? |
| 2:31:17 | Agent Longmire: | Yes, sir. |
| 2:31:20 | Kevin Ross: | Now, in your investigation, in the indictment, it states that it started in November of 2009, is that correct?  When the indictment -- or when the -- excuse me, when the loan application was submitted? |
| 2:31:35 | Agent Longmire: | Correct. |
| 2:31:35 | Kevin Ross: | And then in November, I believe it was, in -- no, I'm sorry.  November of 2009, it was |

15

|  |  |
|---|---|
|  | submitted, the loan application, and February the 19th of 2010 is when the loan agreement was executed. Is that right? |
| 2:31:51 | Agent Longmire:    It sounds right. |
| 2:31:52 | Kevin Ross:    Okay. Now, would you agree with me as far as the conduct of the counts that are alleged in the indictment, the majority of those occur in 2010. Is that correct? |
| 2:32:08 | Agent Longmire:    I believe that is. Yes, sir. |
| 2:32:09 | Kevin Ross:    Okay, then so if counts one, two and three, which has to do with major fraud, on those three counts, April 18th of 2010, July the 16th of 2010, and November 28th of 2010. Does that sound accurate to you? |
| 2:32:25 | Agent Longmire:    Yes, sir. |
| 2:32:25 | Kevin Ross:    Now, counts four through eleven, when you look at those individual counts that are specified in the indictment, again, those are all stem from April the 30th of 2010, which covers count four, five, and six. Seven and eight are -- and nine are July the 21st of 2010, and then 10 as well, and then 11 December 15th of 2010. Would you agree with that? |

16

2:32:56        Agent Longmire:    Yes, sir.

2:32:57        Kevin Ross:    And that -- those were for wire fraud, is that correct?

2:33:00        Agent Longmire:    Yes, sir.

2:33:01        Kevin Ross:    Okay.  And then counts 12 through 13, which is false statements on the loan application, would you agree with me that count 12 and 13 you have listed occurring between April 2010 -- April -- well, April 18th of 2010 to April 30th of 2010.  Would that be accurate?

2:33:17        Agent Longmire:    That sounds accurate.

2:33:18        Kevin Ross:    And then counts 14 through 15, which has for the false statements, again, count 14 is July the 15th of 2010.  Count 15 is December of 2010.  Would you agree with that?

2:33:32        Agent Longmire:    That sounds accurate.

2:33:33        Kevin Ross:    Okay.  And then, lastly, this counts 16 through 23, which has to do with money laundering, the dates in, again, are 2010, but count 21 is January of 2011.  Count 22 is February 22nd of 2011, and 23 is April 31st of 2011.  Would you agree with that?

17

| | | |
|---|---|---|
| 2:33:57 | Agent Longmire: | Once again, that sounds accurate. |
| 2:33:59 | Kevin Ross: | Okay. So the gravamen of the offenses occurred six to seven years ago. Is that correct? |
| 2:34:08 | Agent Longmire: | Yes, sir. |
| 2:34:09 | Kevin Ross: | Okay. And it comes to your attention in 2014. Now, when did you -- in the course of your investigation of this offense, when did you start looking into Mr. Doost, specifically? |
| 2:34:31 | Agent Longmire: | Once again, I came on after, so I'm not sure when the special agent for SIGAR started her investigation. |
| 2:34:28 | Kevin Ross: | Okay, well let's talk about when you came involved in 2014. When did you start investigating Mr. Doost? |
| 2:34:47 | Agent Longmire: | So, I said approximately 2014. It could have been a little earlier. I apologize for not knowing that date, but when I was introduced to the case, Mr. Doost was already the subject of the investigation. |
| 2:34:59 | Kevin Ross: | Okay. And so when he was the subject of the investigation approximately back in 2014, did |

# ATTACHMENT B

|||
|---|---|
| | an apartment complex.  He owns land in Belize, so there is property and assets and associates outside the United States, which cause a great concern for an individual who is facing potentially 10 years under the guidelines for $15 million fraud, to have a concern. |
| 3:02:48 | I understand from the questioning by the defense that one of the issues that they are potentially going to raise concerns the statute of limitations.  Well, this case is being prosecuted under the Wartime Suspension of Limitations Act, which suspends any statute of limitations for fraud or attempted fraud against the United States or any agency thereof in any manner.  And this is 18 U.S.C. section 3287.  So there is not a statute of limitations problem, which is, I feel that the first line of questioning for the defense was going to.  So that is not an issue. |
| 3:03:24 | This case is a very real case and is being prosecuted by the criminal division in Washington, D.C. and we would request that the defendant be detained pending the trial in this case. |
| 3:03:38 | Judge Horan:   Okay.  Thank you.  Mr. Ross? |