# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Criminal No. 1:17-CR-00109-APM |
| AZAM DOOST, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses the issues left open in the court's decision of April 10, 2019, which denied in large part Defendant Azam Doost's Combined Rule 29 and 33 Motion, ECF No. 105. *See* Mem. Op. and Order, ECF No. 129 [hereinafter Mem. Op.]. What remains for the court to determine is whether Defendant is entitled to dismissal of the false statements (Counts Twelve through Fourteen) and money laundering (Counts Sixteen through Twenty-Three) charges on the ground that those counts are time barred. *See id.* at 29–33. The court did not previously resolve this question because (1) it lacked any evidence as to why defense counsel did not timely move to dismiss those counts, and (2) it granted Defendant an opportunity to respond to the government's contention that the charges were timely under the second and third prongs of the Wartime Suspension of Limitations Act, 18 U.S.C. § 3287. *Id.* at 32. With the benefit of additional briefing from the parties, the court now denies Defendant's motion in its entirety.

I.

Before proceeding to the merits, the court clarifies a procedural aspect of its prior decision. When the court previously addressed Defendant's contention that the statute of limitations barred all but two counts of the indictment, the court evaluated that claim under the "good cause" standard of Federal Rule of Criminal Procedure 12(c)(3). *See* Mem. Op. at 17–18. Both parties agreed that the "good cause" standard applied because Defendant had not moved to dismiss the indictment before the deadline for pre-trial motions. *See* Def.'s Combined Rule 29 and 33 Motions, ECF No. 105, at 30–31 [hereinafter Def.'s Mot.]; Gov't Opp'n to Def.'s Mot., ECF No. 106, at 26–27 [hereinafter Gov't Opp'n]. Defendant asserted as "good cause" that his trial counsel was constitutionally ineffective by not moving to dismiss the indictment as time barred. Def.'s Mot. at 30. Demonstrating "good cause" therefore required Defendant to establish the two prongs of an ineffectiveness claim: (1) trial counsel's conduct was objectively unreasonable, and (2) had counsel filed a timely motion to dismiss, there is a reasonable probability that Defendant would have prevailed on such motion.[1] *See United States v. Weathers*, 493 F.3d 229, 237–38 (D.C. Cir. 1999)).

But the parties' shared position that the "good cause" standard *must* apply rested on a misreading of Rule 12. In Defendant's motion, relying on Rule 12(b)(3)(B), he asserted that "[a] defendant generally *must move* to dismiss an indictment *on limitation grounds* before trial, otherwise their request is untimely." Def.'s Mot. at 30 (emphasis added). But Rule 12(b)(3)(B) does *not* require a defendant to challenge an indictment on limitations grounds before trial. Rule 12(b)(3) lists "defenses, objections, and requests" that "must be raised by pretrial motion," but a motion attacking the indictment as untimely is *not* one of them. *See* Fed. R. Crim. P. 12(b)(3).

---

[1] Defendant also advanced stand-alone ineffective assistance of counsel claims based on defense counsel's failure to move to dismiss the indictment. *See* Def.'s Mot. at 18–19, 30–31.

Indeed, the Advisory Committee specifically "dropped" reference to the statute of limitations from "the nonexclusive list in [Rule 12](b)(3)(A) to permit further debate over the treatment of such claims." *Id.* (advisory committee note to 2014 amendments).

The parties' misreading of Rule 12(b)(3) is potentially consequential. The "good cause" standard is rooted in Rule 12(c)(3), which provides that "[i]f a party does not meet the deadline for making a *Rule 12(b)(3) motion*, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause." Fed. R. Crim. P. 12(c)(3) (emphasis added). The rules thus expressly tie the "good cause" standard to motions listed under Rule 12(b)(3), and a motion to dismiss on limitations grounds is not one of them. That leaves open the question of what standard ought to apply when considering dismissal of an indictment on limitations grounds for the first time after trial. One circuit court has held that there is no standard of review, and that a defendant *waives* his statute of limitations defense if he raises it for the first time after trial. *See United States v. Lewis*, 774 F.3d 837, 845 (5th Cir. 2014). The court so found even if the "facts surrounding [the defendant's] statute of limitations defense are not in dispute." *Id.* The rationale for this rule is that a statute-of-limitations defense potentially raises questions of fact, and if a defendant waits until after trial to raise it, the prosecution is deprived of the opportunity to put forward evidence to rebut the defendant's argument. *See id.* In extending this rationale to instances where the facts are not in dispute, the court determined a bright-line rule "is preferable to a case-by-case determination." *Id.*

This court need not, however, decide whether to follow the Fifth Circuit's approach in *Lewis*, because the government here has not argued waiver. So, the court will use the "good cause" standard that the government says applies. Therefore, for purposes of this case, to establish "good

cause" Defendant must show that his trial counsel was ineffective in failing to challenge the indictment as time barred. *See* Mem. Op. at 17–18.

II.

In its previous decision, the court held that sub-clause (1) of the Wartime Suspension of Limitations Act ("WSLA") could not operate to extend the limitations period on the false statements and money laundering offenses because neither required proof of "fraud . . . against the United States" as an element of the offense. Mem. Op. at 28–30. The court explained, however, that Defendant had more work to do to secure dismissal of those counts. Defendant still had to (1) demonstrate that trial counsel's decision not to challenge the false statements and money laundering counts as untimely was "not objectively reasonable," *Weathers*, 493 F.3d at 237, and (2) show that the WSLA's other two sub-clauses do not enlarge the limitations period. *See* Mem. Op. at 31–33. The court does not reach the first of these inquiries, because Defendant runs aground on the second.

In criminal cases, the statute of limitations is not jurisdictional, but an affirmative defense. *See Smith v. United States*, 568 U.S. 106, 112 (2013); *United States v. Wild*, 551 F.2d 418, 421 (D.C. Cir. 1977). "The Government need not allege the time of the offense in the indictment . . . and it is up to the defendant to raise the limitations defense." *Smith*, 568 U.S. at 112. If there is conflicting evidence on the limitations issue, "the question of whether the government instituted the prosecution . . . in a timely manner becomes an issue for the jury to determine. At that point, the jury must be properly instructed to determine whether the . . . offense occurred outside the limitations period." *United States v. Wilson*, 26 F.3d 142, 158 (D.C. Cir. 1994) (cleaned up and citations omitted). A court that takes a fact question away from the jury concerning a limitations defense commits error. *See id.* at 159 (holding that the trial court committed error by deciding a

4

limitations issue before trial and should have "permit[ed] the government to prove at trial" that the offense was committed within the statutory period). In this case, if defense counsel had moved to dismiss the false statements and money laundering counts before trial, Defendant would not have prevailed. Instead, the court would have left it to the jury to decide whether those counts were untimely, because timeliness is a question of fact.

The third sub-clause of the WSLA suspends the statute of limitations for any offense "committed in connection with the negotiation, procurement, award, performance, payment for, interim financing, cancellation, or other termination or settlement, of any contract, subcontract, or purchase order which is connected with or related to the prosecution of the war or directly connected with or related to authorized use of the Armed Forces." 18 U.S.C. § 3287(3). The wording of sub-clause (3) is decidedly broad, as it reaches transactions "connected with or related to" war efforts. Defendant does not dispute that the $15.8 million loan he received from the Overseas Private Investment Corporation ("OPIC") to develop, maintain, and operate a marble mine in Chesti-i-Sharif, Afghanistan is the type of transaction covered by sub-clause (3) of the WSLA. Rather, he contends that the OPIC loan was not "connected with or related to the prosecution of the war," thereby rendering sub-clause (3) inapplicable. Defendant emphasizes the commercial nature of the loan, and that his "business operations in Afghanistan wholly lack any indications of the pursuit of violence, force, or armed conflict." Def.'s Sur-Reply to Gov't's Opp'n, ECF No. 133, at 8–9. As he puts it: "Doost was a peacemaker clothed with nothing but the private pursuit of a business endeavor. . . . [T]here was no 'rational nexus' between Doost's conduct and the Authorized Use of Military Force." *Id.*

The government takes a different view. It contends that "reconstruction efforts, like the OPIC money in support of the marble industry, were important components in the endeavor to

stabilize Afghanistan, that is, those efforts are related to the authorized use of the Armed Forces." Gov't's Reply to Def.'s Reply in Support of Def.'s Mot. [hereinafter Gov't's Reply], ECF No. 125, at 12–13. The government's position rests on some evidence. It cites to portions of the National Defense Authorization Act for 2009, which included both amendments to the WSLA and provisions relating to reconstruction and stabilization in Afghanistan. *See id.* at 12. The government also cites to an Army Field Manual that speaks to integrating civilian and military activities to combat counterinsurgency movements. *See id.* at 13 n.12. And, importantly, it cites an email from Colonel Thomas H. Brittain, a senior military officer in Afghanistan, that links Defendant's marble mine to the United States' campaign in Afghanistan. *Id.* at 13 n.13. Colonel Brittain wrote to OPIC asking for a meeting "to discuss the way ahead with the Doost marble factory and mining operations." *See id.* (citing Def.'s Mot., Ex. 35, ECF No. 105-35 [hereinafter Def.'s Ex. 35]). In explaining the need for a meeting, Colonel Brittain observed: "[T]he Doost marble operations are a key to stability in" the western provinces of Afghanistan. Def.'s Ex. 35.[2] Thus, according to at least one military official, Defendant's marble mining business was important to the United States' war effort in Afghanistan.

This "conflicting evidence," *Wilson*, 26 F.3d at 158, forecloses Defendant from satisfying the second prong of his ineffectiveness claim—a "reasonable probability" that, had his counsel moved to dismiss the false statements and money laundering counts as untimely, the motion would have succeeded, *Weathers*, 493 F.3d at 238. If counsel had filed such a motion, the court would not have granted it. Binding precedent would have directed a different course: allowing the jury to decide. Because Defendant cannot make out an ineffectiveness claim, he cannot satisfy the

---

[2] Evidently, the defense believed this email was helpful, too. Defense counsel read it to the jury during his closing argument. See Gov't's Reply at 12–13 (citing Jury Trial Tr., September 19, 2018, at 1252–53).

"good cause" standard.  The court therefore denies Defendant's Combined Rule 29 and 33 Motion.

Dated: July 24, 2019

Amit P. Mehta
United States District Court Judge