IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 1:17-cr-109 (APM)<br>) |
| AZAM DOOST, | )<br>) |
| Defendant. | )<br>) |

## UNITED STATES' OPPOSITION TO DEFENDANT'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE, ECF #176

The United States, by and through its undersigned counsel, opposes defendant Azam Doost's emergency motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (hereinafter "Def.'s Mot."). Defendant "requests that this Court grant him compassionate release . . . in light of his bronchial asthma which put [sic] him at increased risk of death or serious illness from the coronavirus (COVID-19)." Def.'s Mot. at 1. More specifically, procedurally he "requests that this Court give an 'indicative ruling' that it would grant the motion should the D.C. Circuit remand for that purpose, so that [defendant] may request that the D.C. Circuit remand the case." Def.'s Mot. at 4; *see id.* at 9.

To be eligible for compassionate release, a defendant must demonstrate the existence of extraordinary and compelling reasons. 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13. Under USSG § 1B1.13, "extraordinary and compelling reasons" include, among other things, terminal illness and medical conditions "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* As discussed below, defendant has not satisfied this threshold showing. The facility

at which defendant is incarcerated has no reported COVID-19 cases, defendant is in a camp facility with a limited population which does not presently allow visitation from outside, defendant has not identified any known risks at the camp facility, defendant has not provided any medical opinion or records as to his condition or the risks he might face (indeed at the time of sentencing just last fall, defendant reported only that he had seasonal asthma and did not use an inhaler), and the only suggestion defendant has made of any potential vulnerabilities to him is from his work at UNICOR, which is a voluntary employment program. If defendant feels vulnerable from doing that work, he should seek another voluntary work assignment. He should not be unduly rewarded with a 90% sentencing reduction because of what he does voluntarily. Accordingly, the government opposes defendant's motion.

1. <u>Brief relevant procedural history and defendant's current location</u>

Following trial in this matter and defendant's conviction by the jury on counts 1-20 of the indictment, he was sentenced by the Court on September 19, 2019 to, among other things, fifty-four months of incarceration. On November 5, 2019, defendant reported to USP Atwater in Atwater, California (Merced County in eastern California). His projected release date is August 23, 2023. https://www.bop.gov/inmateloc/. Defendant has served approximately 6 months of his sentence, or approximately 11% of his sentence.

USP Atwater is a high security U.S. penitentiary with an adjacent minimum-security satellite camp. https://www.bop.gov/locations/institutions/atw/. Defendant is housed at the camp, which has about 122 inmates. *Id.*; *see* Def.'s Mot. Ex. B, at 1 (ECF #176-2) (UNIT: CAMP).[1]

---

[1] Defendant in his motion makes the statement that defendant is currently in a "'petri-dish' of a complex housing more than 1,105 inmates and countless more correctional officers." Def.'s Mot. at 2. Actually, according to the USP Atwater website the number of inmates at the facility is 976 inmates at the USP and 122 at the adjacent Camp, for a total of 1,098 inmates. https://www.bop.gov/locations/ institutions/atw/. Again, defendant is at the Camp with 122 inmates.

All visitation at this facility has been suspended until further notice. *Id.* On Monday, April 27, 2020, the undersigned government attorney contacted the CLC Attorney for USP Atwater, Jolene Harcrow. Ms. Harcrow told the undersigned attorney that Atwater has no confirmed COVID-19 cases. This is confirmed by the Bureau of Prisons ("BOP") public website, updated daily, which reflects all COVID-19 positive cases in BOP owned and operated facilities. https://www.bop.gov/coronavirus/. It shows no reported cases for USP Atwater (last checked on April 29, 2020).

2. Defendant generally and his reported asthma

Defendant is 42 years old (not a high-risk group, e.g., not 65 or older) and, at least at the time of sentencing, "reported himself to be in fair physical health." Presentence Investigation Report, at 19, ¶ 80. When not incarcerated, defendant lives in the San Francisco Bay Area about 25 miles south of Oakland, California. *Id.* at 1. Atwater is approximately 108 miles east of defendant's residence. The Bay Area currently has shelter-in-place orders, which are likely to be extended. https://www.sfexaminer.com/news/extension-of-citys-shelter-in-place-order-very-likely/.

Defendant contends he has a pre-existing condition, specifically, asthma, and that his condition, "in combination with the COVID-19 pandemic provide extraordinary and compelling reasons to modify his sentence and permit his immediate release to home confinement." Def.'s Mot. at 7. Defendant has not, however, obtained medical records in support of his claim, but said he is seeking those. *Id.* n. 4. The government notes, that prior to defendant's sentencing last fall, he reported that he has seasonal asthma, but did not use an inhaler. Presentence Investigation Report, at 19, ¶ 80. He did not report any significant health issues. *Id.*

3

3. <u>What potential risk does defendant face?</u>

Being at a minimum-security camp with a limited population with no outside visitors allowed, basically a shelter-in-place environment with no reported COVID-19 cases, and defendant having apparent seasonal asthma for which he does not use an inhaler, the issue becomes what potential risk does defendant face that would not be even greater back at his residence? *See* Def.'s Mot. at 6, quoting from Exhibit F at 1 (ECF #176-6) ("Many inmates will be safer in BOP facilities where the population is controlled and there is ready access to doctors and medical care."). The only potential risk defendant cites is in his March 23, 2020 email to the Warden, Def.'s Mot. Ex. A (ECF #176-1). Specifically, he states he is "vulnerable" from his work at UNICOR where untested material and unscreened drivers come into the UNICOR area at USP Atwater.[2] The government does not know about the accuracy of defendant's claims as to the UNICOR area, but all inmates who work for UNICOR volunteer for the assignment. *See* *https://www.unicor.gov/publications/reports/FY2017_AnnualMgmtReport.pdf*. If defendant feels vulnerable from working there, he should check with the prison staff about some other work assignment to not have those vulnerabilities. He should not, however, be able to use something for which he volunteers to argue that he should be released from serving his sentence without him taking steps to mitigate what he perceives to be a substantial risk by volunteering for another work assignment.[3]

---

[2] As set out on the BOP website, UNICOR is the trade name for Federal Prison Industries, a wholly owned Government corporation that was established by Congress on June 23, 1934. Its mission is to protect society and reduce crime by preparing inmates for successful reentry through job training. UNICOR is entirely self-sustaining, receiving no appropriated funds from Congress and operating at no cost to taxpayers. *https://www.bop.gov/inmates/custody_and_care/unicor_about.jsp*. It is a voluntary program with more work-eligible inmates than jobs. *Id.* ("Although there are approximately 25,000 inmates who are waiting to work in UNICOR, only 8% of work-eligible inmates participate in the program").

[3] Defendant spends two pages in his motion arguing that he has exhausted his administrative

4. Discussion

Defendant has not persuasively demonstrated what is required for release. Rather, he suggests that anyone at some risk of COVID-19 complications should be immediately released, regardless of what they did, how much time they have served, where they are housed, or any other individual factor, because the BOP purportedly has had a generally ineffective response to COVID-19. That suggestion is not in accord with the facts or the law.

Defendant cites *United States v. Atkinson*, Case 2:19-CR-55 JCM (CWH), 2020 WL 1904585, at *4 (D. Nev. April 17, 2020), which addressed a defendant housed at USP Atwater. In

---

remedies. Def.'s Mot. at 4-5. An Order by District Court Tanya S. Chutkan last Thursday is helpful in addressing those arguments and the others in his motion. *United States v. Mundaray*, Case 1:19-cr-00118-TSC, ECF #35 (D.D.C Apr. 24, 2020). The Order provides, in relevant part, that:

> As modified by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) allows a court to modify a term of imprisonment "upon motion of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). If the exhaustion requirement is met, the court must then determine on the merits whether "extraordinary and compelling reasons warrant such a reduction" and whether "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." *Id.* In doing so, the court must also consider the 18 U.S.C. § 3553(a) sentencing factors to the extent they apply. *Id.*
>
> The court need not reach the exhaustion question here because Mundaray has not shown "extraordinary and compelling reasons" that warrant a reduction of his sentence. The court acknowledges that the COVID-19 pandemic presents significant risks, particularly in a prison environment. But Mundaray, as a 25-year-old is in good health, has not shown he is at heightened risk of developing serious complications should he be exposed to COVID-19 while in prison. The court therefore DENIES Defendant's motion for compassionate release.

Similarly, the Court here need not reach the exhaustion question here because defendant has not shown, as discussed in the text of this opposition, "extraordinary and compelling reasons" that warrant a reduction of his sentence.

that case, the defendant "suffered from a severe illness that puts him at risk of contracting COVID-19 and, should he contract the virus, acutely suffering therefrom. (ECF No. 28). . . . [Defendant] indisputably has a preexisting medical condition that makes him particularly susceptible to COVID-19." *Id.* at 4.[4]  Footnote 3 to the preceding text states that "[defendant's] physician opined that the virus **could** result in [defendant's] death[.]" (bold in original).  Further, defendant in that case represented to the court that the CDC guidelines for preventing the spread of the virus were not being followed in the area where he was housed.  *Id.*  Defendant in the case before this Court has made no such representations to the Court, including no opinion from his physician, other than citing *Atkinson*, about the conditions in the area in which he is housed, Def.'s Mot. at 6-7, and his seasonal asthma does not compare to the severe illness in *Atkinson* that could result in death.  Rather, the present defendant talks generally about BOP statistics from around the country and cites published articles.  Def.'s Mot. at 1; at 7; at 2, notes 2 and 3.

The lack of evidence in the record as to defendant's asthma in this case is reason enough to deny his motion at this time.  In *United States v. Riggins*, Crim. No. 20-10 (CKK), 2020 WL 1984263, at *6 (D.D.C. Apr. 27, 2020), District Court Judge Colleen Kollar-Kotelly, in denying defendant's motion for compassionate release, noted defendant's argument that he had asthma (mild and intermittent) and was a long-term smoker.  "It is unclear whether [defendant] is experiencing asthma issues at this point in time, but the evidence submitted that suggests that it is those with moderate to severe asthma who are most at risk of potentially becoming severely ill with COVID-19.  [Defendant] has not shown that he has moderate to severe asthma or even that he is experiencing asthma currently."  *Id.*; *see* at *5.  As to defendant's smoking history, the court held that defendant "has not shown that his status puts him at a higher risk of severe illness of [sic]

---

[4]  The nature of the "severe illness" is not set forth in the opinion and the cited document at ECF No. 28 is not publicly available.

he contracts COVID-19." *Id.* The court, in denying defendant's motion, found "[t]here is therefore little evidence in the current record to demonstrate that the asthma [defendant] intermittently has put him at higher risk for getting severely ill if he contacts COVID-19." *Id.* at *9.

The Third Circuit in *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. Apr. 2, 2020), held that "[w]e do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." Similarly, in *United States v. Gileno*, No. 19 Cr. 161, 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020), the court found that defendant who allegedly suffered from high blood pressure, high cholesterol, asthma, and allergies "has not shown that his medical issues, which remain largely the same as when he was sentenced, 'substantially diminish [his] ability . . . to provide self-care' within the correctional facility[.]" (bracket in original).[5]

Finally, defendant has not cogently explained why being at the Atwater Camp in eastern California allegedly makes him less safe than if he were out of prison, and instead living in the Bay Area (which has a high rate of COVID-19 infections). Defendant says he wants to return to Newark, California, Def.'s Mot., Ex. B, at 1 (ECF #176-2), which is in Alameda County. The interactive map in the following link shows Alameda County has 1,468 confirmed cases and 56

---

[5] Courts considering bail applications, where unlike here, the defendant is presumed innocent, have rejected the kind of sweeping, non-case specific argument defendant makes here. *See, e.g., United States v. Chambers*, No. 20 Cr. 135 (JMF), 2020 WL 1530746, at *1 (S.D.N.Y. Mar. 31, 2020) (asthma); *Michael Valdez*, No. 19 Cr. 883 (JPO) (S.D.N.Y. Mar. 27, 2020) (asthma); *United States v. Rivera*, No. 20 Cr. 6 (JSR) (S.D.N.Y. Mar. 25, 2020) (asthma); *United States v. Gonzalez*, No. 19 Cr. 123 (NRB) (S.D.N.Y. Mar. 25, 2020) (asthma); and *United States v. Fofano*, No. 19 Cr. 447 (DLC) (S.D.N.Y. Mar. 30, 2020) (asthma).

deaths while in Merced County it reports 108 reported cases and 3 deaths. https://www.mercedsunstar.com/news/coronavirus/article241729401.html. It appears defendant faces a greater risk of Coronavirus if he were to return home. *Cf. United States v. Davenport*, No. 17 Cr. 61 (LAP) (S.D.N.Y. Apr. 9, 2020) [Dkt. 255, at 2] (denying motion of defendant with diabetes and heart disease; explaining "that there are no current cases of COVID-19 at Schuylkill but that Haverford, the town to which [the defendant] proposes to be released, has one of the highest rates of COVID-19 infection in the Commonwealth of Pennsylvania").

5. Conclusion

Because the defendant has not demonstrated the existence of extraordinary and compelling reasons for compassionate release, the United States respectfully submits that his emergency motion should be denied.

Respectfully submitted,

ROBERT A. ZINK
Chief, Fraud Section

/ s / *Daniel P. Butler*

DANIEL P. BUTLER
D.C. Bar #417718
MICHAEL P. MCCARTHY
D.C. Bar #1020231
Trial Attorneys, Fraud Section, Criminal Division
United States Department of Justice
1400 New York Avenue, NW, Fourth Floor
Washington, D.C. 20530
(202) 307-2184 (Butler)
(202) 305-3995 (McCarthy)
Daniel.Butler2@usdoj.gov
Michael.McCarthy2@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2020, a copy of the foregoing document has been or will be sent via ECF to counsel for the defendant.

/ s / *Daniel P. Butler*
_____
Daniel P. Butler
Trial Attorney, Fraud Section
Criminal Division
United States Department of Justice