UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | Criminal No. 1:17-cr-00109-APM |
| | ) | |
| **AZAM DOOST,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

I.

Defendant Azam Doost, for a second time, seeks a reduction in sentence and compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). *See* Def.'s Second Emergency Mot. for a Reduction in Sentence and Compassionate Release Pursuant to 18 U.S.C. § 3582, ECF No. 184 [hereinafter Def.'s Second Mot.]. Defendant asserted in his first motion that the condition of "bronchial asthma" placed him at increased risk of death or serious illness from COVID-19, but the court found that "Defendant's evidence of 'moderate to severe' asthma is tenuous at best" and that he had "not shown that his place of detention, USP Atwater, presents a greater risk of exposure to COVID-19 relative to the risk presented in the community." Order, ECF No. 180, at 3. Having found no "extraordinary and compelling" circumstances for release, the court denied Defendant's motion. *See id.* at 4.

Defendant filed the instant motion on July 19, 2020. *See* Def.'s Second Mot. The court held two hearings on the motion, the first on August 10, 2020, and the second on August 12, 2020. *See* 8/10/20 Hr'g Tr., ECF No. 194; 8/12/20 Hr'g Tr., ECF No. 195. At the second hearing, the court heard from the Health Services Administrator at USP Atwater, Christopher Hanson.

*See* 8/12/20 Hr'g Tr. at 10–32.  Upon considering all the evidence presented and for the reasons explained below, Defendant's second motion fares no better than the first and is denied.

II.

In his second motion—filed by newly retained counsel—Defendant attempts to shore up the deficiencies of his first attempt at release and identifies new grounds that he says place him at higher risk if infected by COVID-19.  To prove up his asthmatic condition, Defendant supplies the court with foreign and domestic medical records dating as far back as 2012, which show treatment and prescriptions for asthma, *see* Def.'s Second Mot., Ex. E, ECF No. 184-5, at 2–4, 16–28, as well as medical records from the Bureau of Prisons ("BOP") showing efforts on his part to obtain treatment and medication for asthma while incarcerated, *see id*. at 5–15.  Defendant also submits the expert declaration of Dr. Mostafa Tabassomi, an interventional pulmonologist, who has not treated Defendant but opines based upon his review of the medical records that Defendant suffers from "moderate persistent asthma" and "underlying allergic rhinitis."  Def.'s Second Mot., Ex. C, ECF No. 184-3 [hereinafter Tabassomi Decl.], at ¶¶ 6, 17.  The CDC's most recent guidance on COVID-19 states that persons with "moderate-to-severe" asthma "might be at an increased risk for severe illness from COVID-19."  *People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION ("CDC"), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Sept. 17, 2020) [hereinafter CDC Guidance].

Dr. Tabassomi identifies several additional medical concerns.  He opines that Defendant is obese based on his body-mass index (BMI) of 31.3, as of July 1, 2020.  *See* Tabassomi Decl. ¶ 12.  Adults with a BMI of over 30 are categorized as obese.  *See About Adult BMI*, CDC, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/index.html (last visited September

17, 2020).  Defendant had the same BMI as of August 9, 2020.  *See generally* Decl. of Sara Azari, ECF No. 191.  The CDC's Guidance provides that persons who are obese are "at increased risk of severe illness from COVID-19."  CDC Guidance.  Dr. Tabassomi observes that "[p]atients with asthma and obesity are especially prone to severe illness, morbidity and mortality if infected with the COVID-19 virus."  Tabassomi Decl. ¶ 31 (emphases omitted).[1]  In addition, Dr. Tabassomi states that Defendant "may suffer" from "undiagnosed chronic obstructive pulmonary disease," or COPD, based on his 24-year history of smoking one pack of cigarettes per day.  *Id.* ¶ 8.  The CDC's COVID-19 Guidance provides that persons with COPD are "at increased risk of severe illness from COVID-19."  CDC Guidance.[2]

Defendant also offers evidence that he claims shows that remaining at USP Atwater puts him at greater risk of becoming infected.  As of the date of his filing, USP Atwater reported that six staff and one inmate had tested positive for COVID-19, an increase from the one positive case reported as of June 24, 2020.  *See* Def.'s Second Mot. at 7.  As of August 12, 2020, when the court held its second hearing on Defendant's motion, the number of positive cases had increased to four inmates and nine staff.  *See* 8/12/20 Hr'g Tr. at 19.  Moreover, Defendant provides details about the living conditions at USP Atwater, which he claims inadequately protect him against infection.  *See* Def.'s Second Mot. at 14–15.  He is critical of the dorm-style facility in which he lives with dozens of other inmates, which requires him to share sinks, showers, toilets, and telephones; the

---

[1] *See also* Mahdavinia et al., *Asthma prolongs intubation in COVID-19*, J. ALLERGY CLIN. IMMUNOL. PRACT. (July-Aug. 2020) ("The co-occurrence of asthma with obesity . . . places obese patients with asthma at markedly higher risk for a worsened disease course from coronavirus disease 2019."), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7224651/#:~:text=Asthma%20was%20independently%20associated%20with,course%20from%20coronavirus%20disease%202019 (last visited Sept. 17, 2020).

[2] In addition, based upon a finding of a "neoplasm" reflected in a recent BOP medical record, Dr. Tabassomi expressed the concern that Defendant might have an "abdominal malignancy"—cancer—a diagnosis that would require further diagnostic testing to confirm.  Tabassomi Decl. ¶¶ 9–11. Defendant received additional diagnostic testing outside the prison facility after Dr. Tabassomi signed his declaration.  That testing confirmed that Defendant does not suffer from cancer and that the "neoplasm" was an "umbilical hernia" that will require surgery.  *See* 8/12/20 Hr'g Tr. at 8–9, 11–12.

lack of regular cleaning of commonly used items, such as computers and phones; and the inability to socially distance in these conditions. *See id.* Defendant also emphasizes the increase in COVID-19 within the City of Atwater and Merced County, where USP Atwater is located. *See id.* at 12–13. That uptick, Defendant argues, puts him at greater risk, because the guards, who presumably live in the area, are not being routinely or randomly tested. *See id.* at 17–18; 8/12/19 Hr'g Tr. at 23 (confirming that the BOP does not require "any staff testing, random or otherwise"). Defendant contends that release to home confinement in Alameda County, where he lives and where the incidence of COVID-19 is lower, would reduce the risk he faces. *See* Def.'s Second Mot. at 13.

### III.

The First Step Act permits a court to modify a term of imprisonment

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

18 U.S.C. § 3582(c)(1)(A). If the administrative exhaustion requirement is met,[3] the court must determine whether "extraordinary and compelling reasons warrant" the modification, and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* Under U.S.S.G. § 1B1.13, "extraordinary and compelling reasons" include, among other things, a "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* cmt. 1.(A).

Courts throughout the country have grappled with the question whether the risk of being infected with COVID-19 is a "extraordinary and compelling" reason for release. Courts are

---

[3] Defendant appears to have exhausted his administrative remedies, and the government does not contend otherwise.

4

generally in agreement that COVID-19 by itself does not justify a sentence reduction, and that the early release determination must be specific to the movant's circumstances. *See, e.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ."); *United States v. Wheeler*, Crim. No. 19-cr-00085 (ESH), 2020 WL 2801289, at *3 (D.D.C. May 29, 2020) (stating that "the Court must concern itself primarily with the particular characteristics of an individual defendant when determining what constitutes an 'extraordinary and compelling' reason, *not* a generalized risk to the prison population as a whole"). In making such individualized assessments, courts have considered two primary factors: (1) the defendant's "specific health concerns," and (2) "the conditions" at the facility where the defendant resides. *See United States v. Franklin*, Crim. No. 07-cr-178 (JDB), 2020 WL 4049917, at *2 (D.D.C. July 20, 2020). It is therefore imperative that an inmate seeking early release come forward with actual proof that is particular to his circumstances, and not rely on generalized, undifferentiated concerns about health risk.

Here, with respect to his "specific health concerns," Defendant primarily relies on his conditions of obesity and asthma, which, under the CDC's Guidance, place him at heightened risk for severe illness from COVID-19.[4] The government does not dispute the diagnosis or severity of Defendant's asthma, but it does question the evidence supporting his condition of obesity. *See* Gov't Opp'n to Def.'s Second Mot., ECF No. 187, at 3–4. The government points to Defendant's wide weight fluctuations, including an increase of over 26 pounds between May 13, 2020, and July 1, 2020 (eighteen days before he filed his motion), to suggest that Defendant's

---

[4] The court does not consider Defendant's *undiagnosed* condition of COPD as a basis for release. An undiagnosed condition, absent some convincing reason to believe that the condition is highly likely, cannot rise to the level an "extraordinary and compelling" reason for release.

obesity is manufactured. *See id.* at 3. The court need not determine whether Defendant is genuinely obese or not. It can presume that he is. For even if Defendant's health issues increase his risk, he has not demonstrated that conditions at USP Atwater give rise to "extraordinary and compelling" circumstances warranting early release.

The number of positive COVID-19 cases at USP Atwater has been low as an overall percentage of inmates. USP Atwater has a total population of 970 inmates; of that total, 99 inmates, including Defendant, reside at the camp component of the facility. *See USP Atwater*, BOP, https://www.bop.gov/locations/institutions/atw/ (last visited on September 17, 2020). As of July 18, 2020, one day before Plaintiff filed his motion, one inmate and six staff at USP Atwater were confirmed positive with COVID-19. Def.'s Second Mot. at 7. As of August 12, 2020, the date the court heard from Christopher Hanson, USP Atwater's Health Services Administrator, the totals were four positive inmates and nine staff. 8/12/12 Hr'g Tr. at 19.[5] Although the number of inmates testing positive has increased, that number must be put in context. As Mr. Hanson explained, the inmates who tested positive were transferees from other facilities and were determined to be positive upon their arrival at USP Atwater; the inmates were immediately placed into quarantine and did not come in contact with the general population, where Defendant resides. *See id.* at 20. In fact, according to Mr. Hanson, *no inmate in the general population at USP Atwater*, as of August 12, 2020, has tested positive for COVID-19. *See id.* Thus, the inmates who have tested positive posed no risk to Defendant.

Defendant places great emphasis on the fact that, consistent with BOP policy, the guards at USP Atwater are not regularly tested, and so he could be exposed to someone who is asymptomatic. Mr. Hanson could not assure the court, for instance, that none of the guards who

---

[5] As of the writing of this Memorandum Opinion, the positive numbers at USP Atwater are one inmate and four staff. *See COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited Sept. 17, 2020).

tested positive were among the general population in the days before their positive tests. *See id.* 21–22. The absence of regular testing among guards and other jail officials undoubtedly presents some risk to inmates, but how much additional risk is not at all clear. What the court knows is that Defendant has not shown that any long-term inmate in the general population at USP Atwater has tested positive. Presumably, that means there has been little or no guard-to-inmate COVID-19 transmission. The risk of catching COVID-19 from an asymptomatic guard therefore does not rise to the level of an "extraordinary and compelling" circumstance that would warrant reducing Defendant's sentence.

IV.

Even if Defendant had presented "extraordinary and compelling reasons" for release, the court still would have to determine whether the factors under 18 U.S.C. § 3553(a) favor his release. *See Franklin*, 2020 WL 4049917, at *3. They do not. In particular, releasing Defendant would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, or afford adequate deterrence. *See* 18 U.S.C. § 3553(a)(2).

Defendant stands convicted of twenty felony offenses: three counts of major fraud against the United States, eight counts of wire fraud, four counts of making false statements on a loan application, and five counts of money laundering. *See* Verdict Form, ECF No. 53. His total fraud approached, at least, $9 million. *See* Sentencing Hr'g Tr., ECF No. 175, at 39. The court sentenced him to a below-guidelines sentence of 54 months of incarceration, *see* Judgment in a Criminal Case, ECF No. 159, at 3,[6] which he began to serve on November 5, 2019, *see* Gov't Opp'n to Def.'s First Emergency Mot. for Compassionate Release, ECF No. 177, at 2. Thus, as of today, Defendant has served a little more than 10 months in prison for a complex, multi-million fraud

---

[6] Defendant's guidelines range was 87 to 108 months of incarceration. *See* Sentencing Hr'g Tr., ECF No. 175, at 57.

7

that victimized American taxpayers. That means that, even if Defendant is released to home confinement a full six months after serving 85% of his sentence (approximately 46 months),[7] Defendant has served only slightly more than a quarter of his sentence in prison. Given the nature and circumstances of Defendant's offense, releasing Defendant after having served such a low percentage of his sentence in prison would not reflect the seriousness of the offense, promote respect for the law, provide just punishment, or afford adequate deterrence. *Cf. Franklin*, 2020 WL 4049917, at *4 (refusing compassionate release where the defendant had served 79% of his total sentence).

Defendant argues that he has actually served a greater percentage of his sentence, because he is eligible for the BOP's Residential Drug Abuse Treatment Program, or RDAP, which if successfully completed could reduce his term of incarceration by up to 12 months. *See* Def.'s Second Mot. at 43. It is far from clear whether Defendant actually qualifies for the RDAP program, as his presentence report suggests no "verifiable substance abuse disorder," 28 C.F.R. § 550.53(b)(1). *See* Presentence Investigation Report, ECF No. 117, ¶ 84. In any event, even if the court were to subtract 12 months from Defendant's sentence, he still has served only a third of his sentence in prison. Given the nature of Defendant's crimes, release after such a short period of time served would not further the objectives of sentencing under § 3553(a).

---

[7] *See* 18 U.S.C. § 3624(b) (affording 54 days of good time credit for each year of a prisoner's sentence, which means that a defendant who receives full good-time credits serves approximately 85% of his sentence), § 3624(c)(2) (authorizing prerelease custody to be served in home confinement for up to six months).

V.

For the foregoing reasons, Defendant's Second Emergency Motion for a Reduction in Sentence and Compassionate Release Pursuant to 18 U.S.C. § 3582, ECF No. 184, is denied.

Date:  September 18, 2020.

Amit P. Mehta
United States District Court Judge